634 S.E.2d 456 (2006)
In the Interest of T.A.M., a child.
In the Interest of K.M.C. et al., children.
Nos. A06A0311, A06A0312.
Court of Appeals of Georgia.
July 13, 2006.
*458 James E. Watkins, Stockbridge, for appellant (case no. A06A311).
Laura S. Farrar, for appellant (case no. A064312).
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Crumbley & Harper, Jason T. Harper, McDonough, for appellee.
*459 BARNES, Judge.
In these two companion appeals, the father of T.A.M. and the father of K.M.C. and C.F.C. appeal the termination of their parental rights. The children share the same mother, and T.A.M. was born while the mother was still married to the father of the other children. The mother's parental rights were terminated also, but her appeal has been withdrawn voluntarily, and, thus, she is not a party to these appeals.
In Case No. A06A0311, the putative father of T.A.M. contends that the juvenile court erred by terminating his parental rights because it relied on hearsay evidence, the evidence was insufficient, he had no notice of the case plan and, thus, could not complete it, the juvenile court did not consider placement with a relative, and the court also erred in denying his petition to legitimate T.A.M. We affirm the termination of the father's parental rights, and the denial of his petition to legitimate T.A.M., but we must vacate the placement and remand the case for a hearing on alternative placements for T.A.M.
In Case No. A06A0312, the father of K.M.C. and C.F.C. appeals the termination of his parental rights essentially maintaining that, for various reasons, the evidence was insufficient to support the termination. Upon review, we affirm the termination of the father's parental rights to K.M.C. and C.F.C.
On appeal, we must determine
whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.
(Citations and punctuation omitted.) In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
The termination of parental rights under OCGA § 15-11-94 involves a two-prong analysis.
In the first prong, the court must decide whether there is present clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-94(a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94(b)(4)(A). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
(Punctuation omitted.) In the Interest of R.W., 248 Ga.App. 522, 523-524(1), 546 S.E.2d 882 (2001).

Case No. A06A0311
1. The record reflects that T.A.M. came into emergency custody of DFACS on September 9, 2004, when he was three days old. His mother was incarcerated at the time, and married to the father of K.M.C. and C.F.C. A deprivation complaint was filed the next day, showing that four of the mother's five other children had been in Department of Family and Children Services (DFACS) custody since March 28, 2003. A subsequent order entered September 30, 2004, following a adjudicatory hearing, found the infant deprived and awarded DFACS temporary custody. The court approved a concurrent case plan of reunification and non-reunification. The deprivation order was not appealed.
Although she was married to another man, the mother identified Appellant as T.A.M.'s father. Appellant also was incarcerated and serving a seven-year sentence on felony drug charges. Nevertheless, DFACS implemented a case plan requiring that he obtain a substance abuse assessment and follow any treatment provider's recommendations, complete a substance abuse treatment program with a licensed provider, submit to random drug screens and test negative, remain drug and alcohol free for six consecutive months, attend Alcoholics Anonymous (AA) and Narcotics *460 Anonymous (NA) meetings once a week, complete parenting classes and provide written documentation, complete a psychological evaluation, obtain and maintain an income source, obtain and maintain stable, safe, and clean housing, and write a letter to the child twice per month.
On October 21, 2004, the juvenile court held a review hearing and incorporated Appellant's case plan in a January 13, 2005 supplemental order. Subsequently the citizens review panel met on February 10, 2005, and recommended that the parental rights as to T.A.M. be terminated. It was noted that DFACS became involved with the mother in 2001 due to the parents' drug abuse, incidents of domestic violence, and instability in jobs and residences. At the time of the review, Appellant, the mother and her husband were all incarcerated. It was further noted that Appellant had failed to complete any of his case plan goals, had not maintained contact with T.A.M., and had not provided any financial support for the child.
DFACS filed a petition to terminate the parents' rights as to T.A.M. and his siblings, which was served on Appellant at the Harris County Correctional Institute on March 17, 2005. On April 15, 2005, Appellant filed a petition to legitimate T.A.M. Following a hearing, the juvenile court terminated Appellant's parental rights to T.A.M. and denied his legitimization petition. He appeals from these orders.
2. We first consider whether there was sufficient clear and convincing evidence to warrant the termination of Appellant's parental rights. The two-step process for considering parental rights cases is noted above.
First, as the father "did not appeal the original order of the juvenile court finding that [T.A.M. was] deprived, [he] cannot now complain about that finding." (Citation and punctuation omitted.) In the Interest of N.J.W., 233 Ga.App. 130, 133(1)(a), 503 S.E.2d 366 (1998). This unappealed deprivation order establishes that T.A.M. is deprived within the meaning of OCGA § 15-11-94(b)(4)(A)(i). See In the Interest of A.W., 240 Ga.App. 259, 262, 523 S.E.2d 88 (1999).
Next, the juvenile court had sufficient evidence to determine that the father's inability to adequately care for T.A.M. was the cause of his deprivation. In determining if the children lack parental care or control, the court shall consider the various factors established by OCGA § 15-11-94(b)(4)(B) and (C). OCGA § 15-11-94(b)(4)(B)(iii) provides that the court shall consider the "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship." The record shows that the father has been continuously incarcerated since before T.A.M.'s birth on a felony drug charge for which he was sentenced to seven years in prison. His earliest expected release date is 2011. Moreover, the evidence also shows that he has prior convictions for possession of methamphetamine.
Although "[a] parent's incarceration does not always compel the termination of parental rights, . . . it can support a termination when there are sufficient aggravating circumstances present." (Footnote omitted.) In the Interest of M.C.L., 251 Ga.App. 132, 134(1), 553 S.E.2d 647 (2001). These aggravating circumstances may include, in addition to a history of incarcerations for repeated offenses, "whether the incarcerated parent has made an effort to communicate with the child and, despite imprisonment, maintain a parental bond in a meaningful, supportive and parental manner." (Punctuation and footnote omitted.) Stills v. Johnson, 272 Ga. 645, 651(3), 533 S.E.2d 695 (2000). The failure to comply with goals in the case reunification plan is also considered to be such an aggravating factor. See In the Interest of K.B., 252 Ga.App. 808, 809-810, 556 S.E.2d 922 (2001) (failure to provide parental care and support considered an aggravating circumstance); In the Interest of A.T.H., 248 Ga.App. 570, 572(1), 547 S.E.2d 299 (2001) (parent did not established a parental bond and had no present prospects for employment as required by case plan).
In determining the next factor, whether conditions of deprivation are likely to continue, the court may consider the parent's past conduct. Here, the Appellant has been completely absent for the entirety of *461 T.A.M.'s life. Also, though there is evidence of some compliance with his case plan, it was also demonstrated that he failed to maintain or establish a meaningful bond with the child, he never communicated with DFACS about T.A.M., he did not support the child, and he did nothing to establish paternity until two weeks before the termination hearing when he filed a legitimation petition. According to the testimony of the caseworker, the Appellant did not complete any of the goals in his case plan.
A "criminal conviction, [along with] near continuous incarceration during the child's life, and [the] failure to comply with reunification case plans . . . during his incarceration provide[] ample grounds for [the] termination of . . . parental rights." (Footnote omitted.) In the Interest of A.R.G.B., 251 Ga.App. 673, 674(4), 555 S.E.2d 42 (2001). Accordingly, the evidence in the record supports the court's finding that T.A.M.'s deprivation would continue.
The record also supports the trial court's finding, by clear and convincing evidence, that the continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to T.A.M. OCGA § 15-11-94(b)(4)(A)(iv). The evidence showed that this child has been in foster care for all but three days of his life. The caseworker testified that the child has never seen the Appellant and that the early years are the formative years. Additionally, we must also consider that the Appellant never established a parental bond with T.A.M., that his current incarceration prevents him from doing so now, and that T.A.M. has established a parental bond with his foster parents, who want to adopt him.
The same factors showing the existence of Appellant's parental misconduct or inability also support the finding that the termination of his parental rights would be in the child's best interest. In the Interest of D.S., 247 Ga.App. 569, 573, 545 S.E.2d 1 (2001). Furthermore, the record shows that T.A.M. is thriving under the care of his foster parents and it is evident that, because of his young age, the only option that will create a suitable permanency plan for him is adoption. Once the Appellant's rights are terminated, T.A.M. will become eligible for adoption by his foster parents, who have already indicated that they want to adopt him. Accordingly, the record supports the trial court's finding that the termination of Appellant's parental rights was in the best interest of the child.
3. The Appellant also claims that the trial court erred in considering hearsay testimony of the caseworker at the termination hearing. He contends that the caseworker's testimony about his compliance with the case plan was inadmissible hearsay because she had only been T.A.M.'s caseworker for four months.
Appellant, however, has abandoned this claim of error because he failed to cite to any portions of the record in support of his contention. Court of Appeals Rule 25(c)(3); Hudson v. State, 246 Ga.App. 335(1), 539 S.E.2d 860 (2000). Even if the juvenile court did consider hearsay, however, "the Georgia Supreme Court has held that a trial court's consideration of hearsay contained in such records will not constitute reversible error where the evidence introduced at the hearing, not considering the report, was sufficient to support the findings and conclusions of the juvenile court judge." (Citations and punctuation omitted.) In the Interest of A.A., 252 Ga.App. 167, 168(1), 555 S.E.2d 827 (2001). As noted above, the other evidence was sufficient to support the juvenile court's findings.
Moreover, "in all proceedings involving custody of a child, all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." OCGA § 15-11-56(a). "To the degree any such information contained hearsay, the courts are presumed to have disregarded it." In the Interest of O.J., 257 Ga.App. 1, 4(2), 570 S.E.2d 79 (2002).
4. T.A.M.'s father also complains that the juvenile court erred by finding that no relatives exist with whom the child could be placed. Under OCGA § 15-11-103(a)(1),

*462 [i]f, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child.
DFACS concedes that the record is devoid of any evidence regarding its efforts to find an appropriate relative placement. While the father did not specifically identify any relatives to be considered, according to the clear dictates of the statute, it is incumbent upon the court and DFACS to conduct a thorough search for a suitable family member, and the record does not show that such a search was ever conducted.
Accordingly, while we affirm the trial court's termination of the Appellant's parental rights, we find that the permanent placement of the child with the Department of Human Resources was premature in the absence of an investigation by the court and the department into whether a suitable placement with relatives could be made. We, therefore, vacate that part of the juvenile court's order which makes permanent the placement of the child with the department pending a decision that there is no suitable alternative placement for the child within the family. See In the Interest of N.B., 239 Ga.App. 336, 339(2), 521 S.E.2d 47(1999). We also remand the case to the juvenile court with direction that the juvenile court evaluate the possibility of placing the child with a suitable family member. In so doing, we do not express any belief that the child necessarily must or should be placed with any family member.
5. Contending he could not complete the case plan goal because he never received notice of it, Appellant contends that his due process rights were violated. The caseworker testified that she had taken over the case on January 1, 2005, but that the file reflected that the Appellant was sent a letter notifying him of his case plan. Although she could not produce the letter or a signed case plan at the termination hearing, she testified that she read the document during her review of the file.
Even though he claimed no notice of the case plan, at the termination hearing he admitted that about one month after his son was born two different women visited him at prison, and talked with him about his child. He said they never told him about a case plan, but "they were from DFACS." The Appellant also said that he did not find out about the case plan until the day of the hearing, but testified that he completed parenting and substance abuse classes because "I knew I was going to end up coming to court one day. . . I don't want to lose my son."
As noted previously, the juvenile court judges credibility, and given the evidence, it was authorized to believe the caseworker rather than the father. See In the Interest of C.R.G., 272 Ga.App. 161, 161-162, 611 S.E.2d 784 (2005) (this Court neither weighs evidence nor determines credibility of witnesses; rather, we defer to trial court's fact-finding.)
6. The father also contends the juvenile court erred by denying his petition to legitimate T.A.M. DFACS maintains that we cannot consider this issue because an order in a legitimation proceeding is subject to the discretionary appeal procedure. See OCGA § 5-6-35(a)(2). A direct appeal is authorized in this case because the legitimation case has been appealed along with the termination case, which is directly appealable. See OCGA § 5-6-34(d); In the Interest of D.S.P., 233 Ga.App. 346, 347(1), 504 S.E.2d 211 (1998).
The trial court's decision in matters of legitimation must be affirmed absent an abuse of discretion. In re J.B.K., 169 Ga. App. 450, 451(1), 313 S.E.2d 147 (1984). Because of our findings in Division 2, sufficient clear and convincing evidence exists to support both the denial of his legitimation petition and the termination of his parental rights. Thus, the juvenile court did not *463 abuse its discretion in denying appellant's legitimation petition. See In the Interest of S.H., 251 Ga.App. 555, 558(1), 553 S.E.2d 849 (2001) (evidence supporting the termination of parental rights supported denial of legitimation petition).

Case No. A06A0312
7. The father of K.M.C. and C.F.C. contends the evidence is not sufficient to support the termination of his parental rights to the children. He enumerated four errors in his appellate brief: that the evidence was insufficient for the juvenile court to find that he had not completed his case plan's goal of completing a substance abuse assessment; that it was error to terminate his parental rights because he cooperated with DFACS in submitting to drug screens and continually tested negative; that there was insufficient evidence that he did not have a bond with his children; and that it was error to terminate his parental rights because he substantially completed his case plan. The father has not presented a separate argument in his brief for each enumeration. Instead, he has presented one argument which, we assume, encompasses all of his assertions. Any error not included in this argument and any enumeration not supported with citation of authority are deemed abandoned. Court of Appeals Rule 25(c)(2).
8. Viewed in accordance with the standards previously noted, the record demonstrates that C.F.C. was born on February 13, 2001, and K.M.C. was born on February 21, 2002. The father and the children's mother were married in September 2001. At the time of the October 2001 referral, it was alleged that the children were living in a home that was too small for the number of children and with no water or sewage. The father was incarcerated and had an extensive criminal record. He was released in December 2001, but was arrested again in June 2002 for domestic violence. As a condition of the father's probation he was required to attend anger management classes and perform community service, but he failed to do so. In October 2002, he broke the children's mother's finger during an argument, and was once again arrested. He was in jail when the mother and children were evicted from their residence in December 2002, and in February 2003, when they were again evicted, his address was unknown. DFACS filed a deprivation complaint and petition for a protective order on behalf of K.M.C., C.F.C., and their three siblings. DFACS requested, among other things, that the father stay out of the home until he completed domestic violence counseling and provided the department with an address and telephone number.
The juvenile court found the children deprived, but the children remained in their parents' custody until March 22, 2003, when the father, once again, hit the mother and also pushed one of the other children. DFACS obtained custody of the children through an emergency shelter order, and filed another deprivation complaint. Following a hearing, the children were again found deprived. The parents stipulated to the April 24, 2003 finding of deprivation, and the mother was given custody of the children. In the protective order, the juvenile court ordered the parents to refrain from domestic violence, obtain stable housing and employment, receive substance abuse assessments, and undergo random drug screens. DFACS subsequently filed a contempt motion, alleging that the parents were not complying with the terms of the protective order because, among other things, the father had not paid rent and the family was facing eviction.
The mother was found in contempt, and DFACS was given temporary custody of K.M.C. and C.F.C., but the father received a 30-day continuance to work on his case plan. The father was apparently incarcerated during this time, but the record does not reflect the offense. On July 18, 2003, DFACS implemented a reunification case plan requiring the parents to attend parenting classes, receive domestic violence counseling, obtain a job and housing, and for the father to write his children two letters a week and schedule a psychological evaluation. The juvenile court approved the plan in a January 10, 2004 order nunc pro tune to July 22, 2003, the date of the hearing. A supplemental order dated September 25, 2003, incorporated the citizens review panel's recommendation of non-reunification permanency plan. *464 The review panel noted that the father was in jail.
A February 12, 2004 panel review recommended a permanency plan of adoption for K.M.C. and C.F.C., and on May 13, 2004, DFACS filed another deprivation petition and moved to extend custody of the children, alleging that the parents had failed to complete their case plans and noting that they were all incarcerated at that time. Following a hearing, the children were again found deprived, and DFACS's temporary custody was extended. In its August 5, 2004 order, the court approved a non-reunification plan, and this order was not appealed. The juvenile court found that the parents "failed to comply with their case plan for reunification as follows: both parents are frequently incarcerated. Neither parent has completed the psychological treatment or substance abuse treatment. The father has both parole and probation holds."
The father moved for a review of the permanency order, and after a hearing, the juvenile court found that the "circumstances surrounding the entry of a Permanency Order of non-reunification due to the deprivation of the children by the natural father have not substantially changed." A February 10, 2005 review panel recommended terminal of parental rights, and, thereafter, DFACS filed a petition to terminate the parental rights to K.M.C., C.F.C. and their various siblings. Following a hearing, the parents' parental rights were terminated, and K.M.C. and C.F.C.'s father filed this appeal.
(a) Deprivation. The father does not dispute that sufficient evidence was presented to the juvenile court to find that the children were deprived and that the deprivation was the result of his parental misconduct. Further, the court's deprivation orders were not appealed, and the father is bound by these deprivation findings for purposes of the termination hearing. See In the Interest of A.W., supra, 240 Ga.App. at 262, 523 S.E.2d 88.
(b) Lack of Parental Care or Control. Clear and convincing evidence supports the court's finding that the deprivation resulted from the father's lack of parental care and control. Evidence introduced by DFACS also showed that the father spent 15 of the prior 24 months in jail for various charges including domestic violence. Consequently, during his incarceration, he did not provide the children with necessities or have any meaningful visitation. "Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present. A history of incarcerations for repeated offenses constitutes an aggravating circumstance that may be considered in support of the termination of parental rights." (Punctuation and footnotes omitted.) In the Interest of M.D.F., 270 Ga.App. 460, 465, 606 S.E.2d 658 (2004). Although the evidence showed that the father had visited his children 13 out of the 15 available visitations since his release from jail, more telling is the fact that he could have participated in 98 more visitations had he not been incarcerated.
Moreover, although there was evidence that the father substantially complied with some of the goals of his case plan, including receiving a substance abuse assessment, undergoing drug screenings that were negative, and attending parenting classes, the caseworker testified that he had not attended AA or NA classes once a week, had not completed a psychological evaluation, had not provided any current proof of his income, and did not have safe, stable, and clean housing for the children. The guardian ad litem recommended that the father's parental rights be terminated because he had not substantially complied with his case plan, and was not "showing an interest in trying to raise these children."
Given this evidence, a rational trier of fact could have found by clear and convincing evidence that the father's lack of proper parental care or control caused the children to be deprived. OCGA § 15-11-94(b)(4)(B)(iii), (v); In the Interest of S.K.L., 199 Ga.App. 731, 733(1), 405 S.E.2d 903 (1991).
(c) The Deprivation is Likely to Continue. Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to their parents. In the Interest of *465 A.A., supra, 252 Ga.App. at 172(2)(c), 555 S.E.2d 827 (2001). In this case, abundant evidence existed of past neglect and misconduct sufficient to authorize the finding that the deprivation was likely to continue. Even though some evidence showed that the father attempted to comply with a portion of his case plan so he could be reunited with the children, such an effort is not conclusive of parental fitness, especially considering the father's failure to provide child support, basic necessities, unstable work history, and repeat incarcerations and criminal history. In the Interest of T.L.H., 240 Ga.App. 201, 203, 523 S.E.2d 50 (1999). ("When an incarcerated parent has a criminal history of repetitive incarcerations for the commission of criminal offenses, this constitutes an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue.") (Citation punctuation and emphasis omitted.) The father had acquired housing the month before the hearing, but testified that he needed time to get his house stable, clean, and safe. See also In the Interest of R.G., 249 Ga.App. 91, 94-95(1)(b), 547 S.E.2d 729 (2001) ("A court may find that a parent's conduct over the years is a better predictor of future conduct. A few months of partial stability do not establish that the parent is capable of maintaining the progress.") (citation omitted). "[J]udging the credibility of [his] good intentions was a task for the juvenile court." In the Interest of R.S.H., 269 Ga.App. 292, 297(a), 603 S.E.2d 675 (2004).
The father had an opportunity to make a fresh start when he was released from jail in December 2001, after the first protective order. Instead, he committed new crimes and was re-incarcerated. He was, in fact, incarcerated during a period when his children were twice evicted from their home. Because of the father's prior actions, the trial court was entitled to view the father's recent actions with skepticism. See In the Interest of D.L.D., 248 Ga.App. 149, 154, 546 S.E.2d 11 (2001).
(d) Serious Harm to the Child. The juvenile court was authorized to find from the same evidence detailed above that continued deprivation of the kind already found was likely to cause serious physical, mental, emotional, or moral harm to the children. See, e.g., In the Interest of A.M.L., 242 Ga.App. 121, 124(1)(d), 527 S.E.2d 614 (2000).
9. When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94(a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement. [Cits.]" In the Interest of J.B.A., 230 Ga.App. 181, 185(2), 495 S.E.2d 636 (1998). The evidence showed that the children were one and two years old when they were taken into DFACS's custody. They call their foster father "dad," but refer to their father by his first name, and do not acknowledge him as their father. Further, DFACS adduced evidence showing that the children had the opportunity to be adopted by their foster parents, people with whom they had lived and bonded over the past two years.
The record contains clear and convincing evidence to support the juvenile court's termination, and we find no basis for reversal.
Judgment affirmed in part and vacated in part, and case remanded in Case No. A06A0311. Judgment affirmed in Case No. A06A0312.
ANDREWS, P.J., and BERNES, J., concur.