A06A2156. IN THE INTEREST OF K. C. R., a child.
(642 SE2d 214)

RUFFIN, Judge.

Wayne and Shirley Shumans, the maternal grandparents and legal guardians of K. C. R. (collectively, "the Shumans"), brought a private termination petition, seeking to sever the parental rights of the child's mother and father. Following a hearing, the juvenile court granted the petition with respect to the mother, but denied the petition as to the father.[1] The Shumans appeal, alleging that the evidence of parental misconduct and inability warranted termination of the father's parental rights. The Shumans also contend that the juvenile court erred in failing to consider whether termination was in the child's best interest. For reasons that follow, we disagree and affirm.

A juvenile court properly terminates parental rights where the clear and convincing evidence demonstrates that the natural parent's rights should, in fact, be terminated.[2] In reviewing a juvenile court's order following a termination petition, we view the evidence in a light favorable to the lower court's ruling, and we do not assess witness credibility or weigh the evidence.[3]

Viewed in this manner, the evidence shows that the parents of K. C. R. separated when she was an infant. Following her birth, K. C. R. lived with her mother, with the Shumans providing assistance. When K. C. R. was approximately nine months old, she began living full-time with the Shumans. Initially, the father provided child support and visited his daughter on Sundays. In April 2003, the Shumans obtained legal custody of K. C. R. and at some point they informed the father — who lost his full-time employment in October 2003 — that he was not required to provide child support.

According to the father, his relationship with the Shumans deteriorated. Following a court hearing involving another child, an altercation occurred between the Shumans and the father.[4] Notwithstanding his personal dispute with the Shumans, the father testified

---

[1] The mother neither appeared at the hearing nor appealed the juvenile court's order. Accordingly, we do not address the merits of the court's order as it pertains to the mother.

[2] See *In the Interest of G. W. R.*, 270 Ga. App. 194 (606 SE2d 281) (2004).

[3] See id.

[4] Few details regarding this altercation were elicited during the hearing, but it appears

that they "are great people" and that he could say "nothing at all bad about them" with respect to their raising of K. C. R. The father acknowledged that he had made no attempt to contact his daughter for over two years following the altercation at the courthouse because he was afraid there would be "trouble" if he attempted to go to the Shumans' house, and that this would have been detrimental to both him and the child. Nevertheless, the father claimed that he still wanted to be a part of K. C. R.'s life and that he hoped time would "heal all wounds" between him and the Shumans.

Following the hearing, the juvenile court declined to terminate the father's parental rights, finding that the evidence showed

> that every decision [the father] has made to the detriment of his day to day relationship with the child was made by him on the basis that he thought it was in the best interest of the child. [The father's] voluntarily placing custody with the [Shumans], his agreeing to a legal transfer of custody and his, however misconceived, ceasing visitation to avoid exposing the child to any feared confrontation between him and the petitioners. Even in the face of the prospect of losing all further contact or connection with the child at the hand of petitioners through this action, he has praised them for their character and rearing of his child and conceded that the child is better off in their custody than in his. Such commendation and admission indicates a far greater recognition of the ultimate responsibility of the un[selfish][5] love of a parent for a child than is found in one who lacks the parental care to warrant forfeiting the parental title.

The trial court then concluded that the clear and convincing evidence did not demonstrate "parental misconduct or inability on the part of the . . . father . . . [sufficient] to justify a termination of his parental rights."[6] The Shumans appeal this ruling.

There is no judicial ruling that has greater significance than one severing the parental bond.[7] Accordingly, the power of severance must be exercised cautiously and scrutinized carefully.[8] Before a

---

that the father felt threatened by Mr. Shumans and reported the incident to a sheriff's deputy at the courthouse.

[5] The order actually uses the word "un-selfless," but it is clear from the context that this is a mere scrivener's error.

[6] The trial court nonetheless found that K. C. R. should remain in her grandparents' custody.

[7] See *In the Interest of T. J. J.*, 258 Ga. App. 312, 314 (574 SE2d 387) (2002).

[8] See id.

juvenile court may terminate a parent's rights under OCGA § 15-11-94, that court must first find "that there is clear and convincing evidence of parental misconduct or inability *and* that termination is in the child's best interest."[9] In order to meet the first requirement, the juvenile court must find that: (1) K. C. R. is deprived; (2) the lack of parental care or control caused the deprivation; (3) such lack of care or control is likely to continue; and (4) continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[10]

Here, the juvenile court was authorized to conclude that there was insufficient evidence of the fourth prong — that continued deprivation would cause K. C. R. physical, mental, emotional or moral harm. The record reveals that K. C. R. is living with family members and enjoys a stable home environment. Thus, this is not a case in which the child is languishing in foster care.[11] When Mrs. Shumans was asked by the trial court why termination of the father's rights would benefit K. C. R., she speculated that it might be detrimental if the father attempted to remove K. C. R. from the home. She further testified that K. C. R. might qualify for social security disability benefits based upon her grandfather's disability if the Shumans were able to adopt her. However, we cannot say that this testimony constitutes clear and convincing evidence that termination is warranted. Even accepting that K. C. R. might meet the definition of a deprived child, it does not automatically follow that continued deprivation is harmful to her.[12]

Moreover, the trial court apparently found that terminating the father's parental rights at this juncture was not in K. C. R.'s best interest. And a juvenile court is vested with broad discretion in making such determination.[13] Under the unique circumstances of this case, we cannot say that the juvenile court manifestly abused its discretion in ruling as it did.[14] Accordingly, we affirm.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 15, 2007.

---

[9] (Emphasis supplied.) Id.

[10] See *In the Interest of M. A.*, 280 Ga. App. 854, 856 (635 SE2d 223) (2006).

[11] Compare *In the Interest of S. T.*, 244 Ga. App. 86, 88-89 (2) (534 SE2d 813) (2000).

[12] See *In the Interest of J. T. W.*, 270 Ga. App. 26, 37 (2) (d) (606 SE2d 59) (2004).

[13] See *In the Interest of G. B.*, 263 Ga. App. 577, 583 (1) (588 SE2d 779) (2003).

[14] See id.

*Donald C. Gibson*, for appellant.
Wayne Rowell, *pro se*.