A07A0850. IN THE INTEREST OF S. M. W., a child.
(651 SE2d 211)

RUFFIN, Judge.

The father of S. M. W. appeals the termination of his parental rights, challenging the sufficiency of the evidence.[1] Specifically, he argues that the State failed to show that S. M. W.'s deprivation is likely to continue or that she would be harmed by a continuing relationship with him.[2] Because we conclude that the State did not establish by clear and convincing evidence that the cause of deprivation is likely to continue, we reverse.

On appeal from a termination of parental rights, we defer to the juvenile court's factfinding and do not weigh the evidence or determine the credibility of witnesses.[3] Our role is to determine whether "any rational trier of fact could have found by clear and convincing

---

[18] *United Parcel Svc. v. Moore*, 238 Ga. App. 376, 377-378 (519 SE2d 15) (1999).

[1] The mother's parental rights were terminated by the same order, but she has not appealed.

[2] The father also enumerates as error the admission of particular expert witness testimony, but has not supported the enumeration with argument or citation to authority. We therefore deem it abandoned. See Court of Appeals Rule 25 (c) (2); *In the Interest of T. A. M.*, 280 Ga. App. 494, 501 (7) (634 SE2d 456) (2006).

[3] See *In the Interest of K. S. W.*, 233 Ga. App. 144, 147 (1) (503 SE2d 376) (1998).

evidence that the natural parents' rights to custody have been lost."[4] In applying this standard, we bear in mind that "[t]here is no judicial ruling that has greater significance than one severing the parental bond."[5]

Viewed in this manner, the record reflects that S. M. W., who was then four years old, entered the custody of the Department of Family and Children Services ("DFCS") in June 2004 based on allegations of neglect and lack of supervision. At that time, the mother was incarcerated and the father was S. M. W.'s primary caregiver. The parents initially resided in Fulton County, but in 2005 they moved to Haralson County and came under the supervision of DFCS there.

The DFCS case plan required the father to: undergo a substance abuse assessment; attend and complete a drug and alcohol treatment program; submit to random drug screens; remain drug and alcohol free; attend parenting classes; have sufficient housing; and participate in any recommended family counseling. At a termination hearing in May 2006, a Fulton County DFCS supervisor agreed that the father had "cooperated and done everything that was asked of him since December 1, 2005." While he missed some initial visits, the father missed only one visit with S. M. W. between January and May 2006, and that was due to a miscommunication about the time and date of the visit. The father does not have a driver's license and thus made arrangements to take public transportation or obtain rides from Haralson County to visit S. M. W. in Fulton County.

The father obtained a substance abuse assessment. He inquired about family counseling but was not given a referral by either Fulton or Haralson County. He attended Alcoholics Anonymous meetings and was in counseling with a substance abuse program. The father's drug screens were negative.

The Haralson County DFCS placement worker recommended termination of both parents' rights because of transportation difficulties — the father lives in a rural area and does not drive — and because the mother was unstable and left the home for periods of time. She conceded, however, that the father had been cooperative and had done everything she asked of him, even describing him as "the most stable person that [she had] worked with." She characterized the father's home as adequate.

At a continuation of the termination hearing in July 2006, the father testified that he was divorcing the mother. He had a new job and a new residence. He had been steadily employed since May 2005 and had not used drugs during that time.

---

[4] *In the Interest of A. F.*, 283 Ga. App. 509, 510 (642 SE2d 148) (2007).
[5] *In the Interest of K. C. R.*, 283 Ga. App. 593, 594 (642 SE2d 214) (2007).

DFCS has located a potential adoptive family for S. M. W. A psychologist who evaluated the child stated that she needed permanency in her life, as "she appears to be confused about [what is] going to happen to her." A therapist who worked with S. M. W. on a weekly basis testified that the child "looks forward to the weekly contact" with her father and "has verbalized how much she loves her father." Although the juvenile court "applaud[ed]" the father for "making strides," it questioned his stability because he had three different residences and jobs in a year and ultimately terminated his parental rights.[6]

Before a parent's right to custody of his child may be terminated, the juvenile court must find by clear and convincing evidence both that the parent is unfit and that termination is in the child's best interest.[7] In order to establish parental unfitness, the juvenile court must find that "(1) the child is deprived, (2) the lack of parental care or control is the cause of the deprivation, (3) such lack of care or control is likely to continue, and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child."[8]

1. The father asserts that the State did not prove by clear and convincing evidence that the cause of S. M. W.'s deprivation was likely to continue. We agree. The evidence shows that the father substantially complied with his case plan: he received a substance abuse assessment; regularly participated in (although had not yet completed) a drug and alcohol treatment program; submitted to random drug screens, which showed he was drug and alcohol free; and had sufficient housing. He had inquired about family counseling, but had not received a referral from DFCS. DFCS employees who worked with the father found him to be cooperative.

The DFCS placement worker who recommended termination cited only two concerns: the father's inability to drive; and the mother's instability.[9] But the father was not required to drive by the case plan, and many parents, even those in rural areas, are able to

---

[6] We note that the actual termination order entered by the juvenile court was prepared by DFCS and contains a number of findings not supported by the record at trial. For example, the juvenile court requested that DFCS remove references to the father being the legal but not biological father, as there was no evidence to support the allegation. These references were not removed from the final order.

[7] See *In the Interest of M. A.*, 280 Ga. App. 854, 856 (635 SE2d 223) (2006).

[8] (Punctuation omitted.) Id.

[9] On appeal, the State argues that the father did not pay child support while S. M. W. was in foster care, "even though he was ordered to do so." We see no evidence in the record that the father was ever ordered to pay child support. While a parent has a duty to support a child in foster care even absent a court order, see *In the Interest of R. W.*, 248 Ga. App. 522, 525 (2) (546 SE2d 882) (2001), under the circumstances here, where no specific amount was ordered by the

adequately care for their children without doing so.[10] The mother has had her parental rights terminated, and the father has stated his intention to divorce her. There was evidence that S. M. W. had a bond with her father, one which he diligently sought to maintain. Our review of the record indicates that the State failed to prove by clear and convincing evidence that the cause of S. M. W.'s deprivation is likely to continue. Accordingly, we reverse the order terminating the father's parental rights.[11]

2. Because of our holding in Division 1, we need not address the father's remaining enumeration of error.

*Judgment reversed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED AUGUST 17, 2007.

*Phillip Jackson*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Assistant Attorney General*, for appellee.

---

juvenile court, we do not find that the failure to pay child support, standing alone, justifies the termination of parental rights. See, e.g., *In the Interest of A. F.*, 283 Ga. App. 509, 516-517 (642 SE2d 148) (2007).

[10] See id. at 516 (a parent's failure " 'to live up to societal norms for productivity, morality, cleanliness[,] and responsibility' " does not mandate the termination of parental rights); *In the Interest of C. T.*, 286 Ga. App. 186, 190 (648 SE2d 708) (2007) ("we cannot permit DFCS and the juvenile court to 'establish societal standards, unrelated to parental bonds of love or the unique natural protectiveness of a parent for offspring; quantifying and qualifying the socially acceptable environment which a parent must afford a child or be subjected to severance of the parental cords' ").

