A07A1430. In the Interest of M. K., a child.

(653 SE2d 354)

SMITH, Presiding Judge.

A Fulton County juvenile court found 15-year-old M. K. deprived and awarded temporary custody of her to her biological father. In the same proceeding, the court granted the biological father's petition to legitimate M. K. The mother appeals the order, and for the reasons that follow, we affirm the juvenile court's finding of deprivation, but reverse the grant of the putative father's petition to legitimate M. K.

1. In two enumerations, the mother contends that there was insufficient evidence to prove that M. K. was deprived. A deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A). In determining whether a child is deprived, the court focuses on the needs of the child rather than parental fault. *In the Interest of J. P.*, 280 Ga. App. 100, 104-105 (2) (633 SE2d 442) (2006). And a temporary loss of custody is not authorized unless the deprivation "resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." (Citations and punctuation omitted.) *In the Interest of K. S.*, 271 Ga. App. 891, 892-893 (611 SE2d 150) (2005).

On appeal from a finding of deprivation, we "review the evidence in the light most favorable to the juvenile court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived and whether, under the circumstances, the court properly awarded temporary custody of the child. [Cits.]" *In the Interest of D. A.*, 240 Ga. App. 561, 562 (524 SE2d 248) (1999). So viewed, the evidence showed that on August 4, 2006, the Fulton County Department of Family and Children Services (DFACS) filed a deprivation complaint alleging, among other things, that M. K.'s mother "slaps [M. K.] around on a daily bas[i]s" and that M. K. was inadequately supervised. The complaint further alleged that the mother forced M. K. to sell doughnuts late at night and to use credit cards the mother had either stolen or found. Following a probable cause hearing, the juvenile court found that M. K. suffered physical abuse and emotional neglect and that she had unstable housing. The court ordered that M. K. be placed in DFACS custody. M. K. was placed with a relative, and her mother was prohibited from contacting her.

On August 11, 2006, DFACS filed a deprivation petition that included as conditions causing deprivation the mother's physical, verbal, and emotional abuse of M. K., the mother's unstable housing

and history of eviction for erratic behavior, M. K.'s frequent school changes, the mother's lack of financial resources, and M. K.'s being forced to sell doughnuts late at night. Just prior to the hearing on DFACS's deprivation petition, M. K.'s putative father filed a petition for legitimation.

During the hearing, M. K. testified that she was depressed for several years because her mother often told her that she was worthless and hit her on a regular basis. She testified further that since she was eight years old, her mother forced her to ask strangers for money or to sell doughnuts to pay the rent and that she did so until 12:30 a.m. She explained that she and her mother argued over the smallest things and that her mother abused her by slapping her, beating her with a belt, or throwing keys or hangers at her, which sometimes left marks on her. She testified she attended at least four different schools every year because she and her mother moved frequently, temporarily living in hotels. She also explained that her mother could not keep steady employment or pay for household expenses and that food was rarely in the home. She stated further that her mother appropriated lost wallets or purses and used the credit cards found in them to pay for food. M. K.'s mother was often verbally abusive, calling her "worthless," a "failure," and a "doormat."

A friend of M. K. testified that he met M. K. and her mother downtown and that after some conversation, he offered for the two to stay at a home he shared with his mother. He stated further that he witnessed the mother slap M. K. multiple times and hit M. K. with a belt and a coat hanger.

A hotel manager testified that she had many complaints of arguing and fighting between M. K. and her mother while the two resided at the hotel. She stated that she had observed M. K. being dragged down the street by her mother while M. K. was "screaming at the top of her lungs, no, mom; I don't want to go; I don't want to do it." The manager stated further that when M. K. would come to her home to use the computer, she noticed that M. K. was always sad and depressed and that she rarely spoke.

The mother's testimony differed greatly from that of the other witnesses. She testified that M. K. had lied in her testimony and that the two of them "are as close as a mother and daughter can be." The mother denied slapping or demeaning M. K., or forcing her to sell doughnuts and use stolen credit cards. The mother explained that M. K. is emotionally disturbed and that it was M. K.'s decision to ask strangers for money. She described M. K.'s bad temper and tantrums that caused the arguments between them. She explained that most of the arguments concerned 17- and 18-year-old boys who she claimed only wanted to have sex with M. K. She testified that it was M. K.'s idea to sell doughnuts and that she sold them with M. K., but never

after dark, and that the money was used for M. K.'s "exorbitant" needs. She explained that M. K. loved to shop and demanded designer clothing.

Following the hearing, the juvenile court found that, among other things, the mother was unable to provide stable housing, disrupted M. K.'s schooling by moving from place to place, physically, verbally, and emotionally abused M. K., and was unable to provide for the adequate care, control or supervision of M. K. The mother now appeals from the court's finding of deprivation, challenging certain findings of fact in the trial court's order and contending that there is insufficient evidence of deprivation.

Even assuming certain findings of the juvenile court are not supported by the record, there remain many findings that support the court's finding of deprivation. And although the mother's testimony directly contradicted that of the other witnesses, "[t]his Court neither weighs the evidence nor determines the credibility of witnesses. We instead defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Citation omitted.) *In the Interest of D. A.*, supra, 240 Ga. App. at 562. Here, the evidence that M. K. was physically and emotionally abused by her mother and that she lived in an unstable environment was sufficient to meet this standard. See id.

2. In two enumerations of error, the mother challenges the juvenile court's grant of the father's petition to legitimate M. K.

> In deciding whether to grant or deny the legitimation petition, the court must consider the best interest of the child and is not bound by the desires and contentions of the parents. In making this determination, the court must examine the benefits that might flow to the child if she were legitimated and to consider the legal consequences of the grant of the petition.

(Citations and punctuation omitted.) *Adamavage v. Holloway*, 206 Ga. App. 156, 157-158 (1) (424 SE2d 837) (1992). "The father's right to legitimate is absolute subject only to the qualification that the natural mother may object and if she shows valid reasons why the petition should not be granted, the judge may deny it." (Citations and punctuation omitted.) Id. at 158 (1).

During the hearing, the juvenile court asked the putative father if he was certain that M. K. was his biological child. The father responded that he was certain because of a "blood test." The court then asked M. K.'s mother if she had any objection to the legitimation petition. The mother responded that she had "[e]very objection. He has never spent one complete day in her life. He is most of the

problems as to why we were very near homeless most of the time. His child support was constantly in arrears. . . ." The court rejected the mother's objection, stating: "Your reasons are not sufficient for me. . . . She needs to have a legal father. He may die and leave her lots of money. He may win the lottery. He may have parents that can benefit her." The court then granted the legitimation petition.

In considering a legitimation petition,

[t]he court must initially determine whether the father has abandoned his opportunity interest to develop a relationship with the child. Then, depending on the nature of the putative father's relationship with the child and other surrounding circumstances, the standard for evaluating whether legitimation is appropriate is either a test of his fitness as a parent or the best interest of the child.

(Citations and punctuation omitted.) *Smith v. Soligon*, 254 Ga. App. 172, 173 (2) (561 SE2d 850) (2002). Here, contrary to the mother's assertion on appeal, the court gave the mother an opportunity to be heard on the putative father's deprivation petition. She was allowed to state her objections, which were rejected by the juvenile court.

The record reveals, however, that the juvenile court failed to determine if the putative father had abandoned his opportunity interest to develop a relationship with M. K. and also failed to conduct a test of his fitness as a parent or make a determination based upon the best interests of M. K. The court's speculation that the father "may die and leave her lots of money" or "win the lottery" or "have parents that can benefit her" is not equivalent to an examination, based upon facts presented, of the benefit that might flow to M. K. if she were legitimated. The court, in essence, interpreted the putative father's right to legitimate M. K. as absolute, without qualification. This was error. See *Adamavage*, supra, 206 Ga. App. at 158 (1). We therefore reverse that portion of the juvenile court's order regarding legitimation and remand for a hearing on that issue. See id.

*Judgment affirmed in part and reversed in part, and case remanded. Barnes, C. J., and Miller, J., concur.*

DECIDED OCTOBER 25, 2007.

*Nathan A. Hayes*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Wayne E. Grannis, Lytia G. Brown*, for appellee.