708 S.E.2d 544 (2011)
In the Interest of V.H., a child.
No. A10A2150.
Court of Appeals of Georgia.
March 18, 2011.
*545 Joseph Scott Key, McDonough, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Kathryn Ann Fox, Asst. Atty. Gen., E. Suzanne Whitaker, Michelle R. Clark, Stockbridge, for appellee.
DOYLE, Judge.
The father of a seven-year-old girl, V.H., appeals from a juvenile court order finding the child to be deprived. In his single enumeration of error, the father contends that the court erred by allowing a law enforcement officer to testify about the father's purported unwillingness to speak to the officer and by drawing a negative inference from the father's exercise of his right to remain silent. For the reasons that follow, we affirm.
A deprived child is one who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. In determining whether a child is deprived, the court focuses on the needs of the child rather than parental fault. And a temporary loss of custody is not authorized unless the deprivation resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. On appeal from a finding *546 of deprivation, we review the evidence in the light most favorable to the juvenile court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived and whether, under the circumstances, the court properly awarded temporary custody of the child.[1]
So viewed, on April 21, 2009, V.H. was removed from her home. That day, V.H. seemed very lethargic to her current elementary school teacher, and V.H. told the teacher it was because the father "had kept her up all night messing with her." V.H. also told her teacher that she had urinated on herself in the classroom and was sent to the school nurse, who collected the child's underwear. The teacher reported the incident to the principal, and school officials notified authorities.
The principal testified that school officials had contacted the Department of Family and Children Services ("the Department") on other occasions regarding V.H. based on evidence of physical punishment and rat bites that were discovered to be the result of rats the family kept to feed their snakes. The principal also recounted the behavioral difficulties and hygiene issues that the school had experienced with V.H. Additionally, V.H.'s teacher from the prior year testified that the child acted in a sexually provocative manner in class, which the teacher addressed with the father, who replied that V.H. was getting started early learning how to be a stripper.
An officer with the Henry County Police Department Crimes Against Children Unit testified that she interviewed V.H. on the day of the incident and forwarded the child's soiled underwear to the Georgia Bureau of Investigation for forensic examination. An initial screen indicated that the underwear tested positive for the presence of semen; however, at the time of the deprivation hearing, the results of a DNA analysis were not available to show whether or not the father's DNA matched the DNA of the semen on the clothing.
Two days later, a certified pediatric nurse at Children's Healthcare of Atlanta completed a physical examination of V.H., concluding that she had sustained a healed injury to her hymen that was "diagnostic for sexual abuse." A psychologist who interviewed V.H. on May 7, 2009, testified that in her opinion the child had "a history of some kind of abuse" and recommended that the child not have contact with the father until after a final determination on whether any abuse had occurred could be made. She testified that many of V.H.'s behaviors and beliefs were consistent with those of children who had been sexually abused.
A psychologist who performed a sexual trauma evaluation of V.H. on May 7, 2009, testified that although the child did not make an outcry during the evaluation, V.H. (1) was difficult to manage and easily distracted; (2) became anxious when asked any question regarding sex; (3) stated the father loved and played with her, but would not be specific about the kind of play in which they engaged; (4) exhibited abnormal anger and aggression as well as sexual behaviors common in sexually abused girls; and (5) exhibited distorted sexual beliefs. The psychologist opined that V.H. was the victim of sexual abuse by an authority figure, and she advised that the child be kept out of the father's or the mother's care.
V.H.'s adult brother testified that he, his girlfriend, and his children had previously lived in the father's home, and he had witnessed several instances of physical abuse by the father against V.H., including slapping her in the face, and he observed the child with numerous bruises. Moreover, he had experienced physical abuse at the hands of the father, and he eventually moved out of the father's home after the father sent him several text messages implying that the father had committed acts of sexual abuse against him when he was a child.[2]
The brother's girlfriend also testified about her experience living in the father's house, stating that she witnessed various acts of *547 physical abuse by the father and the mother against V.H., including the father hitting the child with a paddle and constant bruising on the child. The brother and his girlfriend lived in the father's house until March or April 2009, and they did not report the ongoing abuse for fear that the father would report their family to the Department.
The father contends that the juvenile court erred by allowing evidence through the testimony of a law enforcement officer that the father was uncooperative with the officer's investigation, that he retained an attorney, and that he refused to submit to a DNA test until officers obtained a search warrant. He argues that he was under no duty to cooperate and that the evidence was inadmissible because it constituted prejudicial, inadmissible commentary on the father's exercise of his right against self-incrimination. The father contends that the admission does not amount to harmless error because there was no evidence of an outcry of abuse made by V.H., no evidence of DNA to support the allegation of abuse, and no other direct evidence that the father sexually abused V.H.
As an initial matter, we note that because the deprivation determination was made by a juvenile court judge, we proceed under the presumption that, "in the absence of a strong showing to the contrary," the judge has "sift[ed] the wheat from the chaff, ignoring illegal evidence and considering only legal evidence."[3] "Moreover, in all proceedings involving custody of a child, all information helpful in determining the questions presented... may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition."[4] With this presumption in mind, and based on the amended order (which lacks reference to the evidence at issue), the elicitation of the testimony at issue does not constitute reversible error.[5] Not considering the statements concerning the father's failure to cooperate, the admissible evidence presented to the juvenile court supports the finding that the father committed sexual abuse of the child as well as numerous acts of physical abuse against her. The evidence as stated above, including testimony regarding the child's statements and physical appearance on the date of removal, the father's previous statements to and interactions with teachers and with V.H.'s older brother, the findings of the psychological and physical evaluations performed on the child, and related expert opinions that those evaluations suggested that the child was a victim of sexual abuse, supports the juvenile court's determination that the father deprived the child by committing sexual abuse against her.[6]
Accordingly, the father's argument is without merit, and we affirm the trial court's deprivation order.
Judgment affirmed.
ELLINGTON, C.J., and ANDREWS, J., concur.
NOTES
[1] (Citations and punctuation omitted.) In the Interest of M.K., 288 Ga.App. 71(1), 653 S.E.2d 354 (2007). See also OCGA § 15-11-2(8)(A).
[2] The brother did not recall being sexually abused by the father.
[3] (Punctuation and emphasis omitted.) Jennings v. State, 296 Ga.App. 767, 675 S.E.2d 623 (2009). See also Carroll v. Carroll, 307 Ga.App. 143, 144, n. 3, 704 S.E.2d 450 (2010) (presumption applied in appeal of a child custody hearing).
[4] (Punctuation omitted.) In the Interest of T.A.M., 280 Ga.App. 494, 499(3), 634 S.E.2d 456 (2006). See OCGA § 15-11-56(a).
[5] See In the Interest of J.R.N., 291 Ga.App. 521, 525(1), 662 S.E.2d 300 (2008). Cf. In the Interest of T.A.M., 280 Ga.App. at 499(3), 634 S.E.2d 456 ("the Georgia Supreme Court has held that a trial court's consideration of hearsay ... will not constitute reversible error [if] the evidence introduced at the hearing, not considering the [hearsay], was sufficient to support the findings and conclusions of" the court) (punctuation omitted).
[6] See In the Interest of M.K., 288 Ga.App. at 73(1), 653 S.E.2d 354.