A07A0255. IN THE INTEREST OF T. L. et al., children.
(646 SE2d 728)

RUFFIN, Judge.

The Juvenile Court of Chatham County issued an order finding T. L. and C. L. to be deprived children and concluding that reunification efforts were not in the best interests of the children. The mother appeals, arguing that the evidence was insufficient to support the court's ruling.[1] As we find the juvenile court's ruling was supported by clear and convincing evidence, we affirm.

On appeal from a nonreunification order, we construe the evidence in favor of the juvenile court's ruling to determine whether clear and convincing evidence supports a finding that reunification services should not be provided.[2] In so doing, we neither weigh the evidence nor determine witness credibility, but defer to the juvenile court's factual findings.[3]

So viewed, the record reveals that the mother has a history of mental health problems dating to 1997.[4] The mother was diagnosed

---

[1] The order also included the father, but the father consented to the juvenile court's ruling at the hearing.

[2] See *In the Interest of J. B.*, 274 Ga. App. 20 (619 SE2d 305) (2005).

[3] See id.

[4] We note that, in its brief, the Department of Family and Children Services occasionally cites the order on appeal to support its factual assertions. Given that the purpose of the brief is to show the evidence presented supported the order, we find such citation to the record to be unhelpful.

with schizo-affective disorder, which manifested in the mother having difficulty regulating her emotions, anxiety, and paranoia. In January 1999, an older child of the mother's, R. L., was removed from her custody and placed with family members as a result of the mother's "mental health issues."

The mother gave birth to T. L. in November 1999. Within seven months, T. L. was found to be deprived and taken from her mother's custody. The mother gave birth to another child, C. L., in May 2003. A reunification plan was devised, which required the mother to obtain counseling and take medication. Initially the mother complied with the plan and made progress, but she subsequently stopped taking her medication and regressed. By August 19, 2004, the parents and children were living in a homeless shelter where the mother was seen slapping one of her children "inappropriately on the face, on the arms, and on the legs" while in "a highly agitated state."[5]

In an order dated September 21, 2004, the juvenile court found both children to be deprived, placed the children in the custody of the Department of Family and Children Services (DFCS), and directed DFCS to prepare a reunification plan. The reunification plan required, inter alia, that the mother attend counseling, take her medication and maintain a source of income and stable housing. In April 2005, the juvenile court approved another reunification case plan that again required the mother to take all prescribed medication, attend counseling sessions, and maintain housing and employment.

After a hearing following a report from a citizen review panel, the juvenile court issued an order dated July 5, 2005 in which it found that the mother had not taken her medication as required and still remained without stable housing or sufficient income to support her children.

Given the mother's failure to progress with respect to the case plan, DFCS petitioned the juvenile court to transfer custody of the children from DFCS to their paternal aunt. Simultaneously, DFCS sought an order terminating reunification services. A hearing on the matter was held on August 18, 2005, during which Dr. Frances Hinchey, a licensed psychologist who had both evaluated and treated the mother, testified. According to Hinchey, the mother was not working full-time and had been homeless "for quite some time" but was currently living in her brother's trailer. Hinchey also reiterated that the mother had not been taking her medication regularly. When asked about the mother's ability to care for young children, Hinchey responded that the mother's inability to regulate her emotions and

---

[5] At some point, the mother and her husband – the children's father – separated.

her "temper related issues" would make parenting extremely challenging and might pose a danger to her children.

Brenda Spencer, the DFCS case manager, also testified. Spencer stated that she had observed visits between the mother and her children and that the mother had often acted inappropriately, including undressing her children, searching for scars or marks on their bodies, and force-feeding one of the children. Spencer also testified that the mother did not always keep scheduled appointments to meet with her. On occasion, the mother's behavior was so "bizarre" that Spencer testified she felt unsafe. On another occasion, the mother appeared, unannounced, to see Spencer and behaved in such an inappropriate manner that she was escorted from DFCS by security. Finally, Spencer testified that the children were doing "extremely well" with their paternal aunt, with whom they had lived since November 2004.

Based upon this and other evidence, the juvenile court found that efforts to reunify the children with their mother were no longer appropriate. Specifically, the court noted that

> reunification is not in the best interest of the children because the mother suffers from a medically verifiable deficiency which renders her incapable of caring for the children. In addition[,] the mother has failed or refused to comply with the Court ordered plan designed to reunify her with the children for a period of one (1) year and continues to lack proper facilities for caring for these children.

In her sole enumeration of error on appeal, the mother contends that the juvenile court's ruling "was contrary to the principles of justice and equity" and that the evidence did not support the lower court's ruling. We disagree.

Pursuant to OCGA § 15-11-58 (h), in reviewing a request by DFCS to terminate reunification services, the juvenile court must "determine by clear and convincing evidence whether reasonable efforts to reunify [the] child[ren] with [their] family will be detrimental to the child[ren]." Under this Code section, a presumption exists that reunification services are inappropriate if "[t]he parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family."[6] "Although this presumption is rebuttable, it has not been rebutted in the instant case."[7] To the contrary,

[6] OCGA § 15-11-58 (h) (1).

[7] (Footnote omitted.) *In the Interest of J. P. V.*, 261 Ga. App. 194, 196 (2) (582 SE2d 170) (2003).

the record shows that the mother continues to struggle with her mental illness and that she would be unable to care for her children if they were returned to her.

The mother argues that her lack of compliance with her case plan should not be deemed unjustified since her inability to complete the case plan stems from mental illness rather than wilful disregard of her children's needs. Pretermitting whether the mother's failure to complete her case plan can be deemed justifiable, it does not necessarily follow that reunification services are warranted. Under OCGA § 15-11-58 (h) (3), a presumption also exists that reunification services should not be provided if "[a]ny of the grounds for terminating parental rights exist." One basis for seeking termination is when there is "[a] medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child[ren]."[8] Because the clear and convincing evidence supported the juvenile court's decision to terminate reunification services, we affirm.[9]

*Judgment affirmed. Bernes, J., concurs. Blackburn, P. J., concurs in the judgment only.*

DECIDED MAY 24, 2007.

*Gary M. Newberry*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Michelle Townes, Assistant Attorney General, Beckmann & Lewis, Leo G. Beckmann, Jr.*, for appellee.

---

[8] OCGA § 15-11-94 (b) (4) (B) (i).

[9] See *In the Interest of J. W.*, 271 Ga. App. 518, 521 (610 SE2d 144) (2005).