A07A1189. IN THE INTEREST OF J. J. et al., children.
(652 SE2d 639)

JOHNSON, Presiding Judge.

The Juvenile Court of Floyd County ordered that services to reunite minor children J. J. and M. B. with their parents be discontinued and that the children be placed in the custody of foster care agency WinShape Homes. The mother appeals, challenging the sufficiency of the evidence supporting the court's order.[1] The challenge as to the issue of nonreunification is without merit and we thus affirm that portion of the juvenile court order. But the challenge as to the issue of placement with WinShape Homes is meritorious, and we thus

---

[1] The children have the same mother but different fathers. The father of J. J. is deceased and the father of M. B., from whom the mother is divorced, has not appealed from the nonreunification order.

reverse that portion of the juvenile court order and remand the case for further proceedings on that issue.

1. On appeal from an order approving plans for nonreunification, we neither weigh the evidence nor determine the credibility of witnesses.[2] Rather, we construe the evidence in favor of the judgment and determine if there is sufficient clear and convincing evidence from which a rational trier of fact could have concluded that reunification services should not be provided.[3]

Construed in favor of the judgment, the evidence shows that J. J. was born on December 5, 1999, and M. B. was born on March 4, 2001. The children were removed from the home of the mother on April 5, 2004, because she had tested positive for methamphetamine, the home was unsanitary, and the children were found hungry, dirty and unsupervised in the home while the mother slept.

After a hearing, the juvenile court found the children to be deprived due to economic instability, alcoholism or drug abuse of the parents and domestic violence. The court placed the children in the custody of the Department of Family and Children Services. An aunt and uncle initially cared for the children until they were no longer able to do so, and the children were then placed in a foster care group home.

The juvenile court adopted a case plan to reunite the children with their mother. The plan required, among other things, that the mother cooperate with the department, maintain a bond with her children, remain alcohol and drug free and complete a substance abuse program, maintain stable housing, become financially stable and be employed for at least six months, and not expose her children to domestic violence.

At the end of February 2005, the department filed a complaint asserting that the mother had not completed her case plan goals. After a hearing, the juvenile court entered an order extending its prior orders for another year, finding that reasonable efforts had been made to reunite the mother and her children, but she had not accomplished the case plan goals requiring her to complete drug treatment and maintain stable housing and employment.

A year later, in March 2006, the children's guardian ad litem filed a motion to discontinue reunification services on the grounds that the mother still had not abided by the case plan requirements and that she is unable to care for the children due to unstable housing and employment, as well as drug dependency issues. A hearing was held in April 2006 at which a department case manager testified that

---

[2] *In the Interest of J. P.*, 253 Ga. App. 732, 735 (560 SE2d 318) (2002).

[3] *In the Interest of J. B.*, 274 Ga. App. 20 (619 SE2d 305) (2005); *In the Interest of J. P.*, supra.

the mother had not completed her case plan, having failed, among other things, to cooperate with the department and to complete drug treatment. Evidence was also introduced that the Floyd County Superior Court had ordered the mother to pay $52 per week of child support, but according to a child support enforcement agent, the mother had not made any payments.

The mother admitted at the hearing that she had not met the case plan goal of establishing stable housing. She testified that she had been incarcerated for several weeks on a contempt of court charge and had moved into and out of various residences, including one where she was involved in a domestic violence incident during which she was bruised and suffered a broken finger. She also admitted that she had not had stable employment and had not paid any child support during the two years her children had been in the department's custody.

Another hearing was held in September 2006. At that hearing, the mother claimed that since the prior hearing she had been renting a house from her uncle for approximately four months. She further testified that she had been working at a nursing home and paying child support for around five months.

A psychologist testified that he had diagnosed the mother with a borderline personality disorder, which includes traits of instability and lack of internal control. Because her own needs are so great, he opined that she would not be an effective parent. Another psychologist testified that the children had been diagnosed with attention deficit disorder, which requires very skilled parenting. He testified that he was concerned about the ability of someone with borderline personality disorder, which indicates impaired judgment and lack of stability, to parent such children. He also testified that it would be detrimental to the children, who have been in the department's custody for more than two years, to continue in such an unsettled situation without any permanency.

> Reunification services are not required when reasonable efforts to reunify a child with his family would be detrimental to the child. There is a presumption that reunification services should not be provided if the juvenile court finds by clear and convincing evidence that the parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family, or if any grounds exist for terminating parental rights under OCGA § 15-11-94.[4]

---

[4] (Footnotes omitted.) *In the Interest of J. P.*, 280 Ga. App. 100, 103-104 (1) (633 SE2d 442) (2006).

As set forth above, the evidence clearly establishes that the mother has unjustifiably failed to comply with the reunification case plan goals. Moreover, a presumption of nonreunification arose based on the mother's failure to pay child support.[5] Having reviewed the record, we conclude that there is sufficient evidence from which the juvenile court was authorized to find that reuniting the children with the mother would be detrimental to the children and thus reunification services should no longer be provided.

2. The mother argues that there is insufficient evidence to support the juvenile court's placement of the children with a third party rather than with a relative. We agree.

In nonreunification cases, the court may enter a custody order placing the children with a willing relative or nonrelative individual who, after study by a person or agency designated by the court, is found to be qualified to receive and care for the children.[6] But if the court finds a compelling reason that placement with a relative or nonrelative individual is not in the children's best interests, the court may place the children in the custody of an agency or organization licensed to receive and provide care for the children which is operated in a manner that provides such care, guidance, and control as would be provided in a family home.[7]

In this case, the juvenile court awarded custody to foster care agency WinShape Homes, which employs the foster parents who have been caring for the children in their home since October 2004. In making that award, the juvenile court found that there is no relative available or fit to assume custody of the children and that there is no other individual willing or able to care for the children.

Those findings, however, ignore the testimony of Elaine Well, the paternal grandmother of M. B. Ms. Well testified that she is willing to have both of the children placed with her; that she is willing to take foster parenting classes in order to qualify to take care of J. J.; that she has prior foster care experience, having cared for nine years for a stepgranddaughter; and that she has visited with both M. B. and J. J. and has a bond with the children. The guardian ad litem who moved for placement with WinShape presented no evidence contradicting Ms. Well's professed willingness to care for the children, and he has cited no part of the record containing a study or report as to whether she qualifies to care for the children.

Under these circumstances, we cannot say that the trial court's sole reason as to why the children could not be placed with a relative

---

[5] OCGA §§ 15-11-58 (h) (3); 15-11-94 (b) (4) (C) (ii).

[6] OCGA § 15-11-58 (i) (1) (A)-(C).

[7] OCGA § 15-11-58 (i) (1) (D).

or other individual — its finding that there is no available relative or other individual willing to care for the children — is supported by sufficient evidence. Accordingly, the juvenile court's award of custody to WinShape Homes is reversed and the case is hereby remanded for further proceedings on the issue of placement.

*Judgment affirmed in part and reversed in part. Phipps and Mikell, JJ., concur.*

DECIDED OCTOBER 9, 2007.

*William H. Newton III*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Holly A. Bradfield*, for appellee.