A11A1628. IN THE INTEREST OF D. H., a child.
(722 SE2d 388)

ANDREWS, Judge.

After D. H., a minor child, was adjudicated deprived by the Fulton County Juvenile Court in April 2009, the Court awarded temporary custody of the child to the Fulton County Department of Family and Children Services (DFCS) and subsequently approved a DFCS case plan prepared pursuant to OCGA § 15-11-58 to reunify the child with her mother; a concurrent permanency plan for reunification with the mother or placement with a relative; and temporary placement of the child with the maternal grandmother. The child's mother appeals from two juvenile court orders entered in March 2011 pursuant to a permanency hearing under OCGA § 15-11-58 by which the Court terminated efforts to reunify the

mother with the child and awarded long-term custody of the child to the maternal grandmother until the child's eighteenth birthday. For the following reasons, we reverse and remand.

At a review hearing conducted by the juvenile court in May 2010 pursuant to OCGA § 15-11-58, the Court entered an order finding that the deprived child would remain in the temporary custody of DFCS and placed with the maternal grandmother, and that the permanency plan remained reunification or placement with a relative. In the May 2010 order, the Court also denied two DFCS motions filed in February 2010 seeking (1) to terminate reunification services and (2) to grant long-term custody of the child to the maternal grandmother until the child's eighteenth birthday. At another review hearing held in September 2010, the juvenile court found that the deprived child would remain in DFCS custody and placed with the maternal grandmother; that the mother was without adequate housing and employment; and that the permanency plan remained reunification or placement with a relative. The juvenile court also stated in the September 2010 order: "If the mother had not obtained housing and employment before the [next annual] permanency hearing in January 2011, [the Court] would consider a Petition to Modify Custody to the maternal grandmother."

At the January 2011 permanency hearing, the mother was present and represented by counsel. The DFCS case manager testified at the hearing that the deprived child had been placed with the maternal grandmother since June 2009; that the mother visits daily with the child; that the mother had largely complied with reunification case plan requirements; and that goals on the case plan were "acquiring sufficient income and a place to live." As to those goals, the case manager testified that the mother had income from SSI benefits for her other children and that the maternal grandmother had agreed to allow the mother to live with her in the grandmother's house that was large enough to accommodate the grandmother, the mother, and all the children. Accordingly, the case manager testified that the mother had satisfied the DFCS case plan criteria for having income and a place to live; that the child was ready to be returned to the legal custody of the mother; and that the DFCS proposed permanency plan was to return legal custody of the child to the mother. In response to questions posed by the juvenile court, the case manager testified that the mother did not currently have her own housing and was not currently employed. The Child Advocate was present at the hearing and concurred in the DFCS recommendation.

In its ruling at the permanency hearing, the juvenile court referred to the order it entered after the September 2010 review hearing and stated that, in the prior order, the Court had found that

"if the mother had not obtained housing and employment before the permanency hearing in January 2011, [the Court] would consider a petition to modify custody to [the] maternal grandmother." Based on that statement, the Court announced that it was reconsidering the two prior DFCS motions filed in February 2010 that the Court denied in its May 2010 order: (1) a motion to terminate reunification services and (2) a motion to grant long-term custody of the child to the maternal grandmother until the child's eighteenth birthday. At that point, the Child Advocate informed the Court that, based on her conversations with the maternal grandmother, the grandmother did not want to accept custody of the child. Nevertheless, the Court orally granted both previously denied motions. Pursuant to this ruling, the juvenile court subsequently entered two written orders in March 2011. In the first order, the Court stated that it was vacating the portion of its May 2010 order denying the DFCS motion to terminate reunification services and was now granting that motion. This order further found that, because the mother had not obtained sufficient housing for herself and the child, reunification services were terminated and the child would remain in the temporary custody of DFCS. In the second order, the Court found that reunification services had been terminated; that termination of parental rights was not in the best interest of the child because of placement with the maternal grandmother; and that the grandmother was an appropriate custodian and willing to care for the child. In this order, the Court stated that, upon reconsideration of the prior DFCS motion denied by the Court in May 2010 seeking the award of long-term custody of the child to the maternal grandmother, the Court was now granting the previously denied motion and pursuant to OCGA § 15-11-58 (i) was awarding the maternal grandmother long-term custody of the child until the child's eighteenth birthday.

1. The mother contends that the juvenile court orders terminating reunification services and awarding long-term custody of the child to the maternal grandmother must be reversed because she did not receive proper notice. The mother, who was present and represented by counsel at the permanency hearing, does not claim that she was not notified of the hearing and the right to be heard at the hearing pursuant to OCGA § 15-11-58 (p), or that she did not receive a copy of the DFCS report including the proposed permanency plan prior to the hearing (OCGA § 15-11-58 (o)), or that she was not advised that the DFCS permanency plan recommending that the child be returned to her custody would be "submitted to the court for consideration to become an order of the court." OCGA § 15-11-58 (o) (4). Rather, she contends that, because no DFCS report or new motion was submitted to the Court prior to the permanency hearing requesting termination of reunification services and the award of

long-term custody to the maternal grandmother, she was not properly notified that these issues would be considered at the hearing, and that the Court's orders terminating reunification services and awarding long-term custody must be reversed.

Prior to a permanency hearing, DFCS

> shall submit for the court's consideration a report recommending a permanency plan for the child which shall include whether and, if applicable, when the child shall be returned to the parent or parents; referred for termination of parental rights and adoption; referred for legal guardianship; placed permanently with a fit and willing relative; or, in the case where the division has provided a compelling reason that none of the foregoing options would be in the best interest of the child, placed in another planned permanent living arrangement.

OCGA § 15-11-58 (o) (2). After hearing evidence, the juvenile court shall "enter a supplemental order incorporating all elements of the proposed permanency plan required by paragraphs (5) and (6) of [subsection (o)] that the court finds essential in the proposed permanency plan." OCGA § 15-11-58 (o) (3) (B). Although this language contemplates that the Court may approve and incorporate in its order essential elements of a DFCS proposed permanency plan, paragraphs (1) through (5) of OCGA § 15-11-58 (o) make clear that the Court may, based on the evidence, reject the proposed plan. Paragraphs (1) through (5) of OCGA § 15-11-58 (o) each state that "[t]he provisions of subsection (p) of [OCGA § 15-11-58] concerning notice, opportunity to be heard, authority of the court, and content of the court's order are applicable to proceedings under this paragraph." In relevant part, OCGA § 15-11-58 (p) provides:

> ... At each such review, hearing, or proceeding, the court in its discretion, based upon the evidence, may enter an order accepting or rejecting any report of the Division of Family and Children Services of the Department of Human Services, ordering an additional evaluation, appointing a guardian ad litem, or undertaking such other review as it deems necessary and appropriate to determine the disposition that is in the child's best interest. ...

Moreover, OCGA § 15-11-58 (o) (5) provides with respect to the Court's order after a permanency hearing:

> ... If the court finds that there is a compelling reason that it would not be in the child's best interests to be returned to

the parent or parents, referred for termination of parental rights and adoption, referred for legal guardianship, or placed permanently with a fit and willing relative, then the court's order shall document the compelling reason and provide that the child should be placed in another planned permanent living arrangement. . . .

Under these provisions, the juvenile court may approve or reject a DFCS proposed permanency plan under consideration at a permanency hearing, and may enter an order based on sufficient evidence which includes termination of reunification services and custody of the child.[1] We find no merit to the mother's contention that, before the juvenile court could consider and rule on termination of reunification and custody issues at the permanency hearing, she was entitled to prior notice by report or motion that DFCS would seek termination of reunification services and the award of long-term custody at the hearing.

2. The mother contends that the evidence was not sufficient to support the juvenile court's order terminating reunification services.

The basis for the juvenile court's order terminating reunification services was that the mother did not have sufficient housing for herself and the child. The Court found that the mother had satisfied most requirements of the reunification plan and was receiving income from SSI benefits for her other two children. As to housing, the Court found that the mother had vacated her previous apartment because of mold and mildew issues, and that, while she was seeking appropriate housing for herself and her children, she was currently residing with family members where she may be able to continue to reside. The Court also found that the maternal grandmother, with whom the child is placed, was willing to allow the mother and her other children to reside with her. Moreover, the Court found that the mother visited with the child and that the child had bonded with the mother and the maternal grandmother. As set forth above, the DFCS case manager testified that the maternal grandmother's house was large enough to accommodate the mother and all the children. The case manager also explained that, after the mother was forced to move from her own apartment by mold and mildew issues, she was put on a waiting list for government-assisted housing.

---

[1] Although the juvenile court stated that it was ruling on a previously denied DFCS motion for termination of reunification services (by means of vacating the Court's May 2010 denial order) we need not consider the mother's claim that this procedural device was inappropriate. We find that, in substance, the Court's ruling was based on its consideration and rejection of the DFCS proposed permanency plan and on the evidence presented at the permanency hearing.

To terminate reunification services, the juvenile court was required to find by clear and convincing evidence that efforts to reunify the child with the mother will be detrimental to the child. OCGA § 15-11-58 (h); *In the Interest of T. S.*, 310 Ga. App. 100, 103 (712 SE2d 121) (2011). In reviewing the Court's ruling on appeal, we view the evidence in the light most favorable to the Court's judgment "to determine whether any rational trier of fact could have found by clear and convincing evidence that reasonable efforts to reunify the [child] with [the mother] would be detrimental [to the child] and therefore reunification services should be terminated." (Citation and punctuation omitted.) Id. There is a rebuttable presumption that reunification services should not be provided or should be terminated if the court finds by clear and convincing evidence that . . . "[t]he parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family." OCGA § 15-11-58 (h) (1); *In the Interest of T. L.*, 285 Ga. App. 526, 528 (646 SE2d 728) (2007).

The juvenile court's order terminating reunification services as detrimental to the child was based solely on the Court's finding that, at the time of the permanency hearing, the mother did not have her own housing for herself and the child and that adequate housing was a requirement of a previously ordered plan designed to reunite the family. Evidence showed that the mother lost her own housing due to mold and mildew issues, and that, while she was on a waiting list for government-assisted housing, she secured housing with relatives, and that the maternal grandmother, with whom the child was placed, offered adequate housing to the mother and the child. The DFCS case manager found this sufficient to show that the mother had secured viable housing for the child. Other evidence showed that the child was bonded with the mother, and the DFCS case manager testified that the mother visited and provided care for the child on a daily basis. Even though the mother did not have her own housing at the time of the permanency hearing, the evidence was not clear and convincing that she unjustifiably failed to comply with the housing requirements of the DFCS-prepared reunification plan, or that, under the circumstances, continued reunification efforts would be detrimental to the child.

Accordingly, we reverse the juvenile court's order terminating reunification services and remand the case to the juvenile court to consider whether a reunification plan is appropriate in light of events occurring since the last permanency hearing. *In the Interest of S. L. E.*, 280 Ga. App. 145, 151 (633 SE2d 454) (2006).

3. An order finding that reasonable efforts to reunify the child with the mother would be detrimental to the child and should be terminated was a prerequisite to the juvenile court's custody order

awarding long-term custody of the child pursuant to OCGA § 15-11-58 (i). In light of the holding in Division 2, supra, it follows that the Court's order awarding custody of the child to the maternal grandmother until the child's eighteenth birthday must also be reversed. We remand the case to the juvenile court to consider whether in light of events occurring since the last permanency hearing the child should remain in the temporary custody of the maternal grandmother or whether some other disposition is in the best interest of the child.

*Judgment reversed and case remanded. Phipps, P. J., and McFadden, J., concur.*

DECIDED JANUARY 25, 2012.

*Stephanie V. Iacobucci*, for appellant.

*Samuel S. Olens, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Collins, Gordon & Henry, William F. Collins, Renia Clay*, for appellee.