522 S.E.2d 667 (1999)
240 Ga. App. 67
In the Interest of K.M. et al., children.
No. A99A1632.
Court of Appeals of Georgia.
September 15, 1999.
Rosamund P. Braunrot, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Cheeley & King, John P. Cheeley, Duluth, Tammy M. Griner, Griffin, for appellee.
ELDRIDGE, Judge.
Appellant Jennifer Martin appeals from a Spalding County Juvenile Court order which relieved the county Department of Family & Children Services ("DFCS") from pursuing the reunification of the appellant with her four children. We affirm the trial court's order.
In her sole enumeration of error, the appellant challenges the sufficiency of the evidence. In her brief to this Court, the appellant repeatedly refers to statutes and cases involving the termination of parental rights and, in so doing, contends that the State failed to prove that the causes of the children's deprivation are likely to continue. See OCGA § 15-11-81(b)(4)(A)(iii).
*668 However, the applicable standard for determining whether the State may cease reunification efforts was codified in 1996. See Ga. L.1996, pp. 474-480, § 1. Under OCGA § 15-11-41(c), the State must submit a report to the trial court within 30 days after removing a child from the home. Such report must include either a reunification plan or "a statement of the factual basis or bases for determining that a plan for reunification is not appropriate." OCGA § 15-11-41(c); see also OCGA § 15-11-41(g). In the latter circumstance, the trial court shall conduct a hearing within 30 days of the filing of the report to make a determination regarding reunification. OCGA § 15-11-41(f). After hearing evidence, the trial court
shall determine by clear and convincing evidence whether reasonable efforts to reunify a child with his or her family will be detrimental to the child and that reunification services, therefore, should not be provided or should be terminated.
OCGA § 15-11-41(i).
However, if the trial court finds clear and convincing evidence of certain criteria, there shall be a presumption that reunification efforts should not be provided. OCGA § 15-11-41(i). Such criteria include the following:
(1) [t]he parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family; (2) [the] child has been removed from the home on at least two previous occasions and reunification services were made available on those occasions; [or] (3) [a]ny of the grounds for terminating parental rights exist, as set forth in subsection (b) of Code Section 15-11-81.
OCGA § 15-11-41(i)(1)-(3). The grounds for termination of parental rights include, inter alia, a medically verifiable health deficiency which prevents the parent from adequately providing for the children's needs; the excessive, unrehabilitated abuse of alcohol or drugs; the physical, mental, or emotional neglect of the children; or the failure to care or support the children as required by law or judicial decree. OCGA § 15-11-81(b)(4)(B), (C).
In demonstrating that reunification was not appropriate in this case, the State showed that, in July 1998, the appellant was a 22-year-old unmarried woman with a tenth grade education and a negligible work history. The appellant had four children: K.M., a girl born in August 1992; twins, a girl and a boy with the same initials, B.M., born in May 1995 (hereinafter "the twins"); and J.G.M.S., an infant boy born in August 1997. Collectively, the children suffer from a variety of health problems, including heart murmurs, asthma, chronic ear infections, anemia, and severe dental decay.
The three oldest children were placed in foster care in December 1995, due to physical abuse and medical neglect by the appellant. At that time, the children and the appellant were living in the maternal grandmother's home. DFCS workers determined the home to be "unlivable" and unsafe for the children. The children subsequently were adjudicated deprived and placed in foster care.
DFCS developed a reunification plan for the appellant. As part of its reunification efforts, DFCS performed the following services for the family: provided cribs for the twins; arranged for extermination services; hauled debris from the yard; drained the septic tank; installed a carbon monoxide detector; replaced portions of the floor, steps, windows, and doors; and repaired the roof and heater. Food vouchers were provided, and a community service worker was assigned to assist the appellant in caring for the house and preparing for reunification.
The children were returned to the appellant's care in May 1996; the family still resided with the grandmother. However, a month later, the grandmother complained to DFCS that the appellant was not assisting in the care of the children. The grandmother reported that the appellant stayed out all night, brought her friends home to stay overnight in the children's bedroom, and was "disruptive," causing a "big problem" in the household. The appellant failed to take the children for medical care, maintain employment, comply with her case plan, or participate in the state Peach employment training program. Because she was not participating in the Peach program, the family eventually lost its state medical, financial, and nutritional *669 program benefits. The grandmother was unable to afford medication for the children and contacted DFCS for additional assistance, including the placement of the children in foster care. On July 25, 1996, on motion by DFCS, the juvenile court ordered the appellant to move out of the grandmother's home due to her failure to care for the children and her non-compliance with the DFCS plan, and so that the family could qualify for state benefits. The appellant was prohibited from returning without the court's permission. The appellant formally lost custody of the children in January 1997, and custody was placed in the grandmother.
Soon thereafter, the appellant returned to the grandmother's home because she was pregnant, unmarried, unemployed, and homeless. In August 1997, the appellant gave birth to a fourth child, J.G.M.S. DFCS sent a letter to the grandmother which notified her that the appellant's presence was a violation of the grandmother's DFCS case plan and again instructed the appellant to move out of the home.
A month later, in September 1997, DFCS received a call from a babysitter with whom the twins had been left for several hours. Neither the appellant nor the grandmother had returned to pick up the children, the babysitter did not know how to reach them, and she could no longer care for the children. Both children were hungry and "filthy"; had soiled diapers and severe diaper rash; had untreated, bleeding sores in their nostrils; multiple sores on their legs and feet; and bruises on their legs, arms, and noses. The female twin had a large, untreated scratch on her chest.
The older child, K.M., was located at school, where she had been enrolled that morning, two weeks after the beginning of the fall term. She also had severe, untreated head lice.
The children again were adjudicated to be deprived and were placed in foster care. DFCS arranged for visitation, but the appellant repeatedly failed to show up for the appointments. According to DFCS, between September 1997 and April 1998, the appellant missed 12 appointments with the infant boy. DFCS workers also testified that the appellant acted inappropriately during visits with the older children by criticizing DFCS and the foster parents; giving the children money, candy, and food and telling them to hide it from DFCS and the foster parents; and promising the children that they would come home soon, where there were many presents waiting for them. Dr. Yvonne Neiner, a clinical psychologist, evaluated K.M. and determined that the visitations were harmful, in that the appellant's actions "provided an excellent opportunity to learn how to be thoroughly manipulative and cunning." In her opinion, since it appeared that reunification was unlikely, the visits prevented the child from adjusting to her new situation. Accordingly, she recommended that visitations be halted.
In December 1997, DFCS notified the juvenile court that it would not be pursuing reunification, and gave its reasons therefor. See OCGA § 15-11-41(c), (g). The trial court issued an order halting visitation in March 1998.
Pursuant to OCGA § 15-11-41(f), a non-reunification hearing was conducted on May 11, 1998, and continued on July 9, 1998. Several witnesses testified to the above facts. In addition, Dr. Neiner testified that K.M. suffered from an adjustment disorder, "sleeplessness, anxiety, oppositional behavior, worry, [and was] refusing to eat."
The appellant testified and admitted making several "bad choices" regarding her children. She blamed her failure to care for the children, work, or participate in a job training program on pain and bleeding she suffered due to endometriosis. The appellant presented medical records documenting treatment for such condition. During such treatment, which began in 1995, the appellant became addicted to pain medication and unsuccessfully participated in drug rehabilitation during her pregnancy with the twins. She admitted that she was still addicted to pain medication. The appellant testified that she had tentatively arranged for a hysterectomy to stop the bleeding, but admitted that there was no proof that the surgery would alleviate the pain. She also admitted that such surgery would necessarily be followed *670 by a period of recovery and drug rehabilitation.
The appellant also testified that she was currently unable to care for the children; she was unemployed and could not support the children, had never financially supported the children, and had never paid child support to DFCS; she lived in the home of a male friend and did not pay for rent or utilities; and she relied on church members and friends to pay for her pain medications and to provide other necessities. However, she asserted that, once she has the surgery, she would be able to go through drug rehabilitation, complete her GED, get job training, secure employment, and find and maintain a home. In fact, she hoped to do all of this while simultaneously caring for four small children, even though she had never previously provided for all four of her children at the same time and, in fact, had never cared for any of the children without substantial assistance from the grandmother and the state.
After hearing the evidence, the trial court concluded that there was clear and convincing evidence which supported a presumption that reunification services should not be provided. OCGA § 15-11-41(i). In its order, the trial court specifically found that this was the third time that the children had been removed from appellant's care; that DFCS had previously undertaken reasonable efforts to reunify the family; and that the appellant had unjustifiably failed to comply with these reunification plans. A finding of any one of the criteria was sufficient to support a presumption that further reunification efforts should not be provided. OCGA § 15-11-41(i).
However, in addition to these findings, the trial court also found that the appellant had a medically verifiable physical deficiency; that the appellant was addicted to pain medication; and that these problems were likely to continue to harm the children.
On appeal, the appellant argues that her neglect of her children should be "excused" because of her health problem. She also claims that she will be able to "repair her family" after surgery, because the cause of the children's deprivation, i.e., her endometriosis, will be remedied.
However, the appellant had been the beneficiary of extensive reunification efforts by DFCS, to no avail. The possibility that appellant's illness may be treated in the future does not address the trial court's clear determination that such illness was not the sole cause of and did not justify the appellant's failure to take advantage of these reunification opportunities or otherwise explain or excuse her long-standing and pervasive neglect of the children. Judging the credibility and weight of the evidence was a task for the trial court, and this Court must defer to the trial court's findings as long as they are supported by clear and convincing evidence. In the Interest of L.S.M., 236 Ga.App. 537, 538, 512 S.E.2d 397 (1999).
After reviewing the record, this Court finds that there was sufficient clear and convincing evidence to support the trial court's finding that several criteria for non-reunification had been met, thereby creating a presumption that additional reunification services should not be provided. See OCGA § 15-11-41(i). Therefore, we affirm the trial court's order.
Judgment affirmed.
BLACKBURN, P.J., and BARNES, J., concur.