554 S.E.2d 616 (2001)
251 Ga. App. 528
In the Interest of M.H., a child.
No. A01A1430.
Court of Appeals of Georgia.
September 12, 2001.
Joel Osteen, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Gary A. Sinrich, for appellee.
JOHNSON, Presiding Judge.
The mother of eight-year-old M.H., who is in the temporary legal custody of the Department of Family & Children Services, has appealed from a juvenile court order finding that a plan to reunify the child with the mother is not appropriate. We agree with the mother that there is insufficient evidence to support the court's finding. And we therefore reverse the juvenile court order deeming reunification inappropriate.
In August 1996, the Liberty County Department of Family & Children Services received a report that three-year-old M.H. had been found wandering unsupervised near a store next to his mother's home. In April and July 1997, the Department received reports that M.H. again had been found wandering unsupervised away from home. M.H. was then placed with his paternal grandparents, with whom he stayed until March 1998, when he returned to his mother's home.
In July 1998, the Department discovered marks on M.H.'s legs. M.H. reported that the father of the mother's other two children, D.H. and T.H., had hit him. In October 1998, the electricity at the mother's home was turned off, so the Department obtained a protective order giving it emergency custody of M.H., D.H., and T.H. The juvenile court later found all three children to be deprived and gave the Department temporary legal custody of them.
The Department developed a plan to reunite the mother with her children. The mother complied with the plan, so the Department petitioned the juvenile court to return the children to her. In May 1999, the court returned physical custody of D.H. and T.H. to the mother, but ordered that M.H. remain in the Department's custody because of behavioral problems. In August 1999, however, the court granted the Department's petition to return physical custody of M.H. to his mother because she had cooperated with the Department and had completed her case plan goals.
*617 In November 1999, with all three children in the mother's physical custody, the court ordered that legal custody of D.H. and T.H. be transferred back to the mother. But pursuant to an agreement between the mother and the Department, the court continued the Department's temporary legal custody of M.H. so he could get psychological treatment. Subsequently, M.H. was removed from his mother's physical custody and placed with a foster care family because of reports that he had exhibited violent behavior. In May 2000, pursuant to the juvenile court's approval, the foster care family moved with M.H. to Kentucky.
Thereafter, in June 2000, the Department and the mother entered into a six-month case plan designed to reunite the mother with M.H. The plan was supposed to last until December 2000, and it listed, among other things, the following goals for the mother: that she educate herself about M.H.'s special needs, that she provide the necessary supervision for M.H., that she provide a stable home, that she acknowledge her responsibility for damage that M.H. has endured, that she cooperate with the Department, and that she visit M.H. while he is in the Department's custody.
In October 2000, before the end of the six-month reunification plan period, the Department notified the mother that a court hearing had been scheduled to determine whether reunification was still appropriate. The juvenile court held the hearing, after which it entered its order finding that reunification is no longer appropriate. The mother appeals from that order.
In order to determine that reunification is no longer appropriate, a juvenile court must find by clear and convincing evidence that efforts to reunify the child with his family will be detrimental to the child.[1] There is a presumption that reunification services should not be provided if the court finds clear and convincing evidence that, among other things, the child has been removed from the home on at least two previous occasions and reunification services were made available on those occasions.[2]
In the instant case, the juvenile court correctly found that there is a presumption that reunification services should not be provided to the mother because on at least two prior occasions M.H. was removed from her home and reunification services were made available on those occasions. Nevertheless, the court erred in failing to find that the presumption was rebutted and that there is not clear and convincing evidence that efforts to reunify the mother and M.H. will be detrimental to the child.
The presumption was rebutted by the testimony of the Department's own clinical psychologist, Dr. Daniel Nagleburg, whom the Department had hired to evaluate both the mother and M.H. and to help develop the reunification plan in question. Dr. Nagleburg testified that he was unsure why the Department was seeking to stop reunification efforts before the end of the six-month case plan period, and that in his opinion it is still possible to reunite the mother and child. He also testified that the mother had substantially complied with the reunification plan goals by continuing her appointments with him, by taking steps to educate herself about M.H.'s special needs, by accepting responsibility for damage that M.H. has suffered, by no longer living with the father of her other two children, and by maintaining employment.
According to Dr. Nagleburg, the mother has not met some of the case plan requirements because of his and the Department's failures in helping her find a parenting class or support group. He also contradicted the Department's implication that the mother is the sole source of M.H.'s behavioral problems, noting that many of his behaviors have occurred while in foster care. The doctor concluded by giving his opinion that placing M.H. back in the mother's home is the only sure way to determine if she can effectively parent him, and that to say otherwise at this point is mere guesswork and speculation.[3]
*618 The Department did not present another psychologist or other expert to contradict Dr. Nagleburg's opinion that reunification is still appropriate, and instead relied on the testimony of M.H.'s grandfather, one of his foster parents, and a Department caseworker. The caseworker recounted the Department's history with the mother and testified that the mother minimizes M.H.'s condition, that there are concerns about the mother's ability to supervise M.H., that the mother blames other people for what has happened to M.H., that the mother had called the Department about once every other week, that the mother had attended her weekly visits with M.H. but had not provided financial support, that M.H. was doing well in foster care, and that the Department was seeking to cease reunification because the mother had not improved and the Department had exhausted its resources.
The foster parent testified that M.H. requires constant supervision, that he is impulsive and on medication, that he knows sexual terms and has touched her breasts, that M.H.'s mother had visited M.H. regularly while they lived in Georgia, that when they moved to Kentucky the mother had sent him letters and called him and visited him once, that M.H. was difficult to control after the mother's visits and would be upset after her calls, that M.H. had been violent and attacked one of her children, and that in her opinion M.H. should be in a single-child home.
The grandfather testified that M.H. resides with him now, that M.H. needs constant supervision, that he bites himself and takes medications to control his behavior, that his behavior changes for the worse after his mother visits, and that he has recently made progress in school.
Contrary to the finding of the juvenile court, the Department's witnesses did not provide clear and convincing evidence that reasonable efforts to reunify M.H. with his mother will be detrimental to M.H. In its appellate brief, the Department claims that returning M.H. to his mother would be detrimental to him based on the testimony that M.H.'s behavior changed after visits with his mother and on the fact that M.H. has spent much of his life in foster care. The Department's claim is unpersuasive.
The Department has failed to show any link between the evidence it cites and its conclusion that returning M.H. to his mother would be to his detriment. There is no evidence explaining why the child behaves differently after his mother visits. Perhaps he behaves as he does because, as the Department implies, the mother is a poor parent; or conversely, perhaps he misses his mother and would prefer to be with her. The problem is that we cannot be certain of the reasons for the child's behavior because the Department has offered no evidence or explanation for it. Moreover, even if there were such evidence, there still is no clear and convincing evidence which supports the additional leap in reasoning that it would be detrimental to M.H. to reunite him with his mother. Likewise, the mere fact that M.H. has spent much time in foster care simply provides no proof from which one can logically conclude that reunification would be detrimental.
Because the Department failed to provide clear and convincing evidence that reunification would be detrimental to M.H., the juvenile court erred in ruling that reunification is no longer appropriate.[4] Accordingly, the juvenile court's order to that effect is hereby reversed.
Judgment reversed.
RUFFIN and ELLINGTON, JJ., concur.
NOTES
[1] OCGA § 15-11-58(h).
[2] OCGA § 15-11-58(h)(2).
[3] Compare In the Interest of U. B., 246 Ga.App. 328, 331(2), 540 S.E.2d 278 (2000) (father's treating mental health counselor did not recommend return of children to father, whose mental health problems had harmed the children).
[4] Compare In the Interest of K. M., 240 Ga.App. 67, 71, 522 S.E.2d 667 (1999) (in addition to unrebutted presumption that reunification was inappropriate, the mother also had a medically verifiable physical deficiency and a drug addiction that were both likely to continue to harm children).