A03A1607. IN THE INTEREST OF D. L. W., a child.
(590 SE2d 183)

JOHNSON, Presiding Judge.

The mother of D. L. W. appeals the order of the juvenile court awarding temporary custody of her child to the Spalding County Department of Family and Children Services (the "Department"). She claims the evidence presented at the deprivation hearing was insufficient to support the juvenile court's findings that (1) D. L. W. was deprived and (2) a reunification plan was not appropriate. For the reasons set forth below, we disagree and affirm.

"In the mother's appeal from the trial court's order of deprivation, we review the evidence from the juvenile court hearings in the light most favorable to the court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the [child was] deprived."[1] So viewed, the evidence showed that in December 1997, the Lamar County Department of Family and Children Services (the "Lamar Department") obtained temporary legal custody of one of the mother's children after an incident in which the mother went into a rage in her home and tore cabinets off the wall, threw things on the floor, and put holes in the wall. The Lamar Department developed a reunification case plan for the mother after she was diagnosed with paranoid schizophrenia. The plan required her to become emotionally stable and included continuing her treatment with a psychiatrist, acquiring and demonstrating parenting skills, and cooperating with the Lamar Department. After a year, the Lamar Department determined that the mother was not showing emotional stability because she had missed appointments for mental health treatment and had been involved in incidents of domestic violence, and because the Lamar Department was unable to confirm that she was properly taking her medication. The child's paternal grandmother took custody of the child in 1998. The Lamar

---

[1] *In the Interest of J. P.,* 253 Ga. App. 732 (560 SE2d 318) (2002).

Department continued to assist the mother in an adult protective services capacity until she moved out of Lamar County in May 2001.

D. L. W. was born in December 2002. The Department received a report of possible neglect in January 2003 and sent a caseworker to the mother's home. The caseworker found the mother's home was clean, although the caseworker noted that D. L. W. was sleeping in the mother's bed rather than a crib. The Department also received a report that D. L. W. had a severe diaper rash. A caseworker confirmed the report and asked the mother to obtain medical treatment for the child. In late January 2003, the caseworker took the mother to Dr. Doug Stone-Miller for a psychological evaluation.

The mother told Dr. Stone-Miller that she heard voices and became paranoid when she was around a large number of people. During a functional achievement test the mother was unable to convey the expiration date on a bottle of medicine. The mother indicated to Dr. Stone-Miller that she wanted and required support in terms of parenting and in managing her emotions. According to her medical records, the mother showed increased instances of paranoia and hallucinations during her pregnancy, when she was unmedicated, although she was able to exercise some control over the symptoms. The records also indicated the mother had attempted suicide in 2001. Dr. Stone-Miller diagnosed the mother with a schizo-effective disorder and as mildly retarded.

In the opinion of Dr. Stone-Miller, the mother was not capable of independent parenting, and that in order to parent she would require day-to-day contact with someone who could determine if the mother's symptoms were increasing, so that "they could intervene and make sure that she didn't hurt the child." Even with daily support, Dr. Stone-Miller testified that there was a risk of decompensation by the mother that could place the baby in danger.

At the time of the deprivation hearing, the mother had been in an adult assistance program for a year and a half. The mother's adult assistance caseworkers saw her from twice a month to twice a week, and sometimes more often, and were involved in building the mother's skills in the areas of managing her anger and her medication. An adult assistance caseworker testified that she had observed the mother interact with D. L. W. and that the interaction was appropriate.

1. The mother argues that the evidence does not show that D. L. W. was deprived. We disagree. As defined in OCGA § 15-11-2 (8) (A), a deprived child is a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." In considering a deprivation petition, "[t]he petition is brought on behalf of the child and it is the child's welfare and not

who is responsible for the conditions which amount to deprivation that is the issue."[2] Deprivation must be shown by clear and convincing evidence.[3]

The Department demonstrated that the mother suffers from a severe psychological disorder, that she cannot care for D. L. W. without daily supervision, and that her mental disorder is potentially dangerous to the child. Among the factors relevant to determining whether the child is without proper parental care and control is a medically verifiable deficiency of the parent's physical, mental, or emotional health of such duration or nature as to render the parent unable to provide adequately for the physical, mental, emotional, or moral condition and needs of the child.[4] A rational trier of fact could have found clear and convincing evidence that D. L. W. was deprived due to a lack of proper parental care or control.[5] Accordingly, we affirm the juvenile court's finding that D. L. W. was a deprived child.

2. The mother also claims that the evidence presented at the hearing was insufficient to support the approval of nonreunification of the mother and D. L. W. We again disagree. OCGA § 15-11-58 (h) provides, in pertinent part:

> When reviewing the determination by the Division of Family and Children Services of the Department of Human Resources that a reunification plan is not appropriate, the court shall determine by clear and convincing evidence whether reasonable efforts to reunify a child with his or her family will be detrimental to the child and that reunification services, therefore, should not be provided or should be terminated. *There shall be a presumption that reunification services should not be provided* if the court finds by clear and convincing evidence that: . . . (3) Any of the grounds for terminating parental rights exist, as set forth in subsection (b) of Code Section 15-11-94.[6]

"The grounds for termination of parental rights include, inter alia, a medically verifiable health deficiency which prevents the parent from adequately providing for the children's needs."[7] Because the

---

[2] (Citation and punctuation omitted.) *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997).

[3] *In the Interest of C. C.*, 249 Ga. App. 101, 103 (547 SE2d 738) (2001).

[4] OCGA § 15-11-94 (b) (4) (B) (i).

[5] See *In the Interest of M. L.*, 259 Ga. App. 534, 536 (1) (b) (578 SE2d 190) (2003) (mother had mental health deficiencies that rendered her incapable of providing adequately for her children).

[6] (Emphasis supplied.)

[7] *In the Interest of K. M.*, 240 Ga. App. 67, 68 (522 SE2d 667) (1999); OCGA § 15-11-94 (b) (4) (B).

juvenile court found that the mother suffered from such a medically verifiable health deficiency, there is a presumption that reunification services not be provided.[8] The mother has failed to rebut that presumption. She relies on the testimony of caseworker Reeves that the mother complied with her prenatal care, did fine during pregnancy even though she was not on her medication, and was a loving mother. However, this evidence does not refute Dr. Stone-Miller's testimony that the mother was mentally ill, this illness could cause the mother to hurt the child, and the mother's mental condition was likely to continue. We conclude that a rational trier of fact could find clear and convincing evidence that reunification would be detrimental to D. L. W. and affirm the juvenile court's order relieving the Department from providing reunification services.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED NOVEMBER 14, 2003.

*Sullivan, Sturdivant & Ogletree, Harold A. Sturdivant, Michele W. Ogletree*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Power, Futch & Cooper, LeAnne P. Cooper*, for appellee.

---

[8] See *In the Interest of U. B.*, 246 Ga. App. 328, 331 (2) (540 SE2d 278) (2000) (nonreunification supported by evidence of deficiencies in the father's mental and emotional health).