**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 23, 2013**

# In the Court of Appeals of Georgia

A13A0762. IN THE INTEREST OF J. T., a child.

RAY, Judge.

The mother of J. T., a minor female child, appeals from the Juvenile Court of Walton County's order granting the Walton County Department of Family and Children Services' ("DFCS") motion for the cessation of the State's efforts to reunify her with J. T. Finding no error, we affirm.

On a mother's appeal from an order approving plans for nonreunification, we construe the evidence in favor of the judgment and determine whether a rational trier of fact could have found clear and convincing evidence that reunification services should not be provided. See *In the Interest of J. P.*, 253 Ga. App. 732, 735 (560 SE2d 318) (2002). "[W]e neither weigh the evidence nor determine the credibility of

witnesses; we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met." (Citation omitted.) Id.

So construed, the evidence shows that appellant has had a long history of substance abuse involving alcohol and prescription medication. Appellant has had an alcohol problem since she was 17 years old and had at least three convictions for driving under the influence ("DUI") in her lifetime. Over the last ten years, appellant's children, including J. T., have been removed from her custody on two occasions because of her inability to care for her children due to her substance abuse.

Appellant lost custody of J. T., then three years old, for the first time in 2002 when she was incarcerated for a DUI conviction. The juvenile court awarded temporary custody of her children to appellant's parents during her incarceration. When appellant was released on probation, the juvenile court returned custody of the children to her by an order noting that appellant had entered into a voluntary treatment program and was residing with her mother.

In March of 2010, appellant again lost custody of J. T. after she was charged with assault and cruelty to children because of an incident involving her 16-year-old niece; she was arrested for driving under the influence during the same week. The juvenile court then entered an order for shelter care of the children on March 31,

2010, finding that appellant had "violent tendencies and . . . substance abuse issues," and that she would not agree to allow the children to enter the care of a safety resource. On April 12, 2010, the juvenile court, after a hearing, entered an order finding probable cause that J. T. and her step-sibling were deprived based upon allegations of violence and substance abuse against appellant, and it transferred temporary custody of them to DFCS pending a hearing. On February 18, 2011, J. T. returned to appellant's custody after the satisfactory completion of DFCS' reunification case plan.

On July 9, 2012, the juvenile court entered another order for the shelter care of J. T. The juvenile court's order noted that DFCS became involved in the case again because J. T. had run away from home.

In August 2012, DFCS filed a motion for non-reunification. At the hearing on these motions, J. T. testified that she had run away from home after an argument with her mother. When J. T. was located, she informed an officer with the Walton County Sheriff's Department that she did not want to return to her mother's home because her mother had been abusing alcohol and prescription medication, that her mother was verbally abusive and used profanity, and that J. T. did not feel safe around her mother.

Deputy Bill Prater with the Walton County Sheriff's Office testified that about a month after J. T. ran away, he was called to appellant's home after an altercation between appellant and J. T.'s step-brother, J. H. Deputy Prater noticed that appellant was obviously intoxicated and smelled of alcohol. Appellant became agitated and violent during the police investigation, and she was arrested for disorderly conduct.

Eva Smith testified that she was the coordinator for a Mothers Against Drunk Driving ("MADD") course that appellant previously had been court-ordered to attend as part of her probation. Smith testified that appellant had phoned her several times to ask her to take custody of J. T. and had offered to give her Xanax in exchange for serving as a safety resource for J. T. Smith testified that appellant's speech during these conversations was slurred and that she had been asked not to return to the class.

Henri Reid, a licensed professional counselor, testified at the hearing as an expert witness on behalf of DFCS. Reid performed the Comprehensive Child and Family Assessment ("CCFA") on the family, which is designed to identify the strengths and weaknesses of the family and determine the future stability of the family. Reid testified that she interviewed both J. T. and appellant about the reasons why J. T. had been removed from the home. Reid stated that

4

J. T. told her that she had run away from home because her mother had relapsed, and that her mother would become verbally abusive when using alcohol and pills. J. T. further told Reid that she did not "have any confidence that her mom would ever live a substance-free life." J. T. also noted that because of her mother's substance abuse, her grandparents assumed the traditional parental tasks of ensuring that she had adequate clothing, food, and academic support. Reid also testified that appellant had admitted that she had relapsed as to alcohol, but refused to assume any responsibility for why her children had been taken away. Reid concluded that appellant's home was not a safe place for J. T.

Other family members testified that appellant would drink and take pills at family events, and that they had observed beer cans and pill bottles in appellant's home. Appellant testified at the hearing that she had completed two alcohol treatment programs since 2002 and has been instructed by her doctor not to consume alcohol because of liver problems, but that she still continues to use alcohol.

Based upon the evidence presented at the hearing, the juvenile court granted DFCS' motion for nonreunification. In its order, the juvenile court noted that appellant's "long history of substance abuse involving alcohol and prescription medication . . . had the effect of rendering [appellant] incapable of providing

5

adequately for the physical, mental, emotional, or moral condition of her child." The juvenile court noted that the evidence indicated that "because of the [appellant's] substance abuse, the deprivation will likely continue, and harm will come to the child if the deprivation continues."

"In order to approve [DFCS's] recommendation that a reunification plan is not appropriate, a juvenile court must determine by clear and convincing evidence that reasonable efforts to reunify a child with his or her family will be detrimental to the child." (Citation and footnote omitted.) *In the Interest of R. N. R.*, 257 Ga. App. 93 (1) (570 SE2d 388) (2002). OCGA § 15-11-58 provides that there shall be a presumption that reunification services should not be provided if the juvenile court finds the existence of any of the four factors outlined in OCGA § 15-11-58 (h) (1) - (4) by clear and convincing evidence.[1] The trial court articulated that it was granting DFCS' motion for nonreunification under subsection (3) of OCGA § 15-11-58 (h), which states that there is a presumption that reunification services should not be provided if "[a]ny of the grounds for terminating parental rights exist, as set forth in

---

[1] The existence of any one of these criteria "is sufficient to support a presumption that further reunification efforts should not be provided." (Citation omitted.) *In the Interest of U. B.*, 246 Ga. App. 328, 331 (2) (540 SE2d 278) (2000).

6

subsection (b) of Code Section 15-11-94." OCGA § 15-11-94 (b) (4) provides that the juvenile court may terminate parental rights if

> [t]he court determines parental misconduct or inability by finding that: (i) the child is a deprived child . . .; (ii) [t]he lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) [s]uch cause of deprivation is likely to continue . . . ; and (iv) [t]he continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.

Applying the appropriate standard of review, we find that clear and convincing evidence supports the juvenile court's conclusion that J. T. was deprived because of her mother's substance abuse, that such deprivation was likely to continue and cause harm to J. T., raising a presumption that reunification services should not be provided. The mother has pointed to no evidence rebutting that presumption.[2] Accordingly, the juvenile court did not err in terminating the reunification services and approving the nonreunification plan. See *In the Interest of J. P.*, supra.; *In the Interest of D. L. W.*, 264 Ga. App. 168, 170 (2) (590 SE2d 183) (2003).

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*

---

[2] Compare *In the Interest of M. H.*, 251 Ga. App. 528, 530 (554 SE2d 616) (2001) (presumption rebutted where psychologist hired by DFCS to evaluate the mother testified that, in his opinion, it was still possible to reunify mother and child).