**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 1, 2022**

# In the Court of Appeals of Georgia

A22A0525. IN THE INTEREST OF D. C. et al, children.

DOYLE, Presiding Judge.

The father of twin minor children, D. C. and D. C. appeals a Fulton County Juvenile Court order relieving the Department of Family & Children Services ("the Department") from pursuing the reunification of him with the children. For the reasons that follow, we vacate the order with respect to the father and remand the case for proceedings consistent with this opinion.

The record shows that father was arrested and jailed on March 21, 2019, and he was in custody when the children were born in July 2019. On July 30, 2019, the Department filed a dependency petition, alleging that the children had tested positive for cocaine at birth. Despite knowing the father's whereabouts, the Department failed

to notify him or serve him with the summons and dependency action.[1] As a result, he was not transported to the Court nor legally represented during the first seven months of the proceedings, which included the July 25, 2019 preliminary protective hearing, the August 8, 2019 dependency hearing, and the October 15, 2019 75-day review.

On July 25, 2019, following a hearing, the juvenile court found probable cause that the children were dependent based on their positive cocaine results at birth and the mother's ongoing substance abuse. On August 21, 2019, the juvenile court entered an order finding the children dependent. At an October 15, 2019 review hearing, the Department tendered the first case plan for the family, which was a concurrent adoption/reunification plan, in which the permanency plan and task goals were established for the children's mother; the father was completely omitted from the plan. On November 14, 2019, nunc pro tunc to October 15, 2019, following the October 2019 hearing, the juvenile court transferred temporary legal custody of the children to the Department, found that the mother had failed to comply with her case plan, and adopted the Department's permanency plan for reunification concurrent with adoption.

---

[1] The first indication in the record of notice to the father is a court production order dated February 5, 2020.

On February 13, 2020, the father was transported from jail to the juvenile court for the first time in this case to attend a permanency and review hearing; the court appointed counsel for him at that time.[2] The record also contains production orders for the father's transport from jail for hearings scheduled for August 12, 2020, and September 21, 2020. According to the father, on November 3, 2020, the Department delivered to the father at prison a copy of the Department's second case plan, dated October 22, 2020, without review, and he was directed to sign it by a prison official. The October 2020 case plan did not specify any of the Department's responsibilities nor indicate any services it would provide to the father. On November 9, 2020, the father filed an "Objection to Case Plan, Motion for Reunification Case Plan[,] and Request for Hearing," noting therein the Department's failure to provide him with notice of court hearings and requesting an order directing the Department to develop a reunification plan for him.[3]

On November 20, 2020, the Department filed a motion to change the case plans from reunification to non-reunification, alleging that the father was incarcerated, was

---

[2] The father was transferred from Fulton County Jail to the Wilcox State Prison at some time between February 14, 2020, and August 3, 2020.

[3] In the motion, the father raised the issue of the Department's failure to serve him.

not expected to be released "for several years," and that he had no bond with the children, whom he had only seen in court proceedings. The Department further alleged that pursuant to OCGA § 15-11-204 (d), a reunification plan was "not appropriate considering the health and safety of the children adjudicated as dependent children and such children's need for permanence." On January 19, 2021, nunc pro tunc to November 20, 2019, the juvenile court entered a review order continuing the permanency plan for the children as reunification concurrent with adoption.[4]

On February 18, 2021, the juvenile court entered a permanency hearing and review order based on evidence presented at the September 21, 2020 hearing. The order listed the services provided to and the mother's obligations under the then-current case plan; the order did not mention any services provided to the father or any requirements imposed on him, instead noting that he was "currently incarcerated and has only seen the children once during a court hearing." The order indicated that the permanency plan for the children was reunification concurrent with adoption, but noted that the Department would be seeking a non-reunification case plan and scheduling a non-reunification hearing.

---

[4] The order also included rulings with regard to the parents' older child, who is not at issue in this appeal.

The juvenile court held a virtual permanency hearing on March 16, 2021, at which the father objected to proceeding without proof of service; the court required that service on the father be conducted "in court" by the prison deputy and via electronic copies. At the hearing, the father testified that he was in jail when the children were born. He was employed part-time as a manager in a store owned by family members at the time of his arrest, but the store had since closed. The father began writing the children weekly letters sent via the Department caseworker in October 2020.[5] He received photographs of the children after requesting them. The father testified that one of the charges he was incarcerated for was possession of narcotics; his maximum release date is March 2024, but he has a tentative parole month of September 2023. The father wished to legitimate the children, he planned to obtain employment once he is released from prison to support the children, and he hoped to raise them.

Brittany Lett, the Department case manager for the children, testified that the mother had not been compliant with her case plan.[6] According to Lett, the father was

---

[5] Copies of letters were admitted at the hearing.

[6] The mother is not a party to this appeal.

receiving weekly individual therapy in prison.[7] The father completed his parental fitness and psychological assessments virtually, but because outside providers were not allowed in the prison as a result of the Covid-19 pandemic, it was not possible for him to receive any of the services required under his case plan. Lett also testified that the children had been living with their foster parents since they were released from the hospital; both children had developmental delays and were participating in various therapies. The children had a "very strong bond" with the foster parents and were well cared for.

Following the March 16, 2021 hearing, the court entered a permanency hearing and review order on April 29, 2021, creating for the first time obligations imposed on the father, and including that the father had completed parental fitness and psychological evaluations, indicating that the Department "has been working on facilitating virtual visits," stating that the prison reported that the father had been participating in individual therapy, and concluding that "[n]o other services can be provided to the father while he is incarcerated." Although the order stated that the permanency plan remained reunification concurrent with adoption, the court again scheduled a hearing on the Department's motion for non-reunification.

---

[7] The father denied that he was having therapy sessions at the prison.

6

The juvenile court held the non-reunification hearing on April 19, 2021. Dr. Susan Hays, who performed the attachment and bonding assessments of the children, testified that they were attached to each other and to their foster parents, who are the only parents they have known. The children were "thriving," and Dr. Hays saw no clinical reason to remove them from the foster parents' home. Dr. Hays opined that the children would be harmed if removed from the foster parents, and removal could lead to "anxiety, feelings of helplessness, difficulties in the child[ren] being able to form attachments[,] . . . behavioral problems[,] . . . emotional problems[,] . . . even . . . academic problems."[8]

Lett, the Department caseworker, testified again that the mother had failed to complete a majority of her case plan. The father completed his DNA test on February 10, 2021, and he completed his psychological and parental fitness assessments in January 2021, which resulted in recommendations for individual therapy, substance abuse treatment, random drug screening, assignment of a parental aide, and parenting classes. According to Lett, because of the pandemic, no outside providers were permitted in the prison, and therefore, the father had not been able to receive any of

---

[8] According to Dr. Hays, the children's young age would exacerbate the detrimental effect of removing them from the foster parents' home.

the recommended services. The father was on a waiting list for supervised virtual visitation with the children, but it had not yet occurred. Lett conceded that she had not had any in-person contact with the father, virtual or otherwise. She did receive his letters to the children, which letters she forwarded to the foster parents. According to Lett, both children wore ankle braces and received physical and occupational therapy, and the male child received feeding therapy and the female child received speech therapy. The children were doing "extremely well" and had "an extremely close bond with their foster parents."

The GAL testified that based on her involvement in the case, she recommended non-reunification as to both parents; the mother had not worked her case plan, and the father is "not available to be able to take custody of the twins[,] and they need permanency."

Following the hearing, the juvenile court entered an order for non-reunification, concluding that the mother had failed to comply with a majority of her case plan, was not in consistent contact with the Department, continued to abuse narcotics, and her whereabouts were unknown. The father was incarcerated and unable to care for the children or to "work a case plan for reunification at this time, due to the COVID-19 restrictions of the prison." The order further found that the

children were very bonded to each other and the foster parents, who ensured that the children's special needs were met; if removed from the foster parents' home, "the children would likely suffer detrimental effects to their well-being that could affect them the rest of their lives. The court concluded that the Department had made reasonable efforts to eliminate the need for continued foster care placement and reunification, "[r]eturn to the home would be contrary to the welfare of the children and continued removal of the children from the home is in [their] best interest," and "a non-reunification case plan [is] in the best interests of the children. . . ."[9] This appeal followed.

1. The father argues that the trial court erred by accepting the case plans, which failed to meet statutory requirements, without conducting a hearing.

OCGA § 15-11-200 (a) requires the Department to submit a written report to the court which includes either "a case plan for a reunification of the family . . . or .

---

[9] The juvenile court ruled that visitation between the children and the mother "continues to be appropriate," despite finding that she had "unjustifiably failed to comply with her case plan for reunification." The court did not explain its failure to find that visitation between the children and the father, who had not unjustifiably failed to comply with his case plan, was similarly appropriate. Without such a finding, the father is unlikely to ever have visitation with the children.

. . a statement of the factual basis for determining that a plan for reunification is not appropriate."

> The *report* submitted by [the Department] shall become a discrete part of the case record in a format determined by DFCS and *shall be made available* to a child who is placed in DFCS custody if such child is 14 years of age or older, his or her attorney, his or her guardian ad litem, if any, and *the parent*, guardian, or legal custodian of such child. *The contents of the report shall be determined at a meeting to be held by DFCS in consultation with the parent*, guardian, or legal custodian and child who was placed in DFCS custody, when appropriate. *The parent*, guardian, or legal custodian, the child who was placed in DFCS custody if such child is 14 years of age or older, his or her attorney, and guardian ad litem, if any, *shall be given written notice of the meeting at least five days in advance of such meeting and shall be advised that the report will be submitted to the court for consideration as an order of the court*.[10]

If the report contains a reunification plan,

> [a] copy of the DFCS report and case plan *shall be delivered to the parent*, guardian, or legal custodian by United States mail, e-mail, or hand delivery *at the same time the report and case plan are transmitted to the court*, along with written notice that such report will be considered by the court without a hearing unless, within five days from the date the copy of such report and case plan were delivered, the parent,

---

[10] (Emphasis supplied.) OCGA § 15-11-200 (b).

10

guardian, or legal custodian of the child who was placed in DFCS custody requests a hearing before the court to review such report and case plan.[11]

Further, a reunification plan shall be developed by the Department *with* "*the parent*, guardian, or legal custodian of the alleged dependent child,"[12] and it must include, among other things, "[s]pecific time-limited goals and related activities designed to enable the safe return of such child to his or her home, or, in the event that return to his or her home is not possible, activities designed to result in permanent placement or emancipation"[13] and "[a]ssignment of specific responsibility for accomplishing the planned activities."[14] OCGA § 15-11-201 (b) (15) requires "[a] statement that the parent, guardian, or legal custodian of such child and the child have had an opportunity to participate in the development of the case plan, to review the

---

[11] (Emphasis supplied.) OCGA § 15-11-200 (d) (2).

[12] (Emphasis supplied.) OCGA § 15-11-201 (2) (b).

[13] OCGA § 15-11-201 (b) (4).

[14] OCGA § 15-11-201 (b) (5).

11

case plan, to sign the case plan, and to receive a copy of the plan, or an explanation about why such persons were not able to participate or sign the case plan."[15]

The Department has failed to meet its statutory obligations with respect to the father. First, despite noting that the father was in the Fulton County jail, the Department failed to notify the father or serve him with a copy of the July 30, 2019 dependency petition when it was filed. There is no indication in the record that the Department provided the father with a copy of the initial written report as required by OCGA § 15-11-200 (b) and (d) (2), and it failed to provide him notice of the July 2019 probable cause hearing. The Department failed to give the father notice of the October 2019 review hearing, at which it tendered its first case plan, which was not developed with the father and completely omitted any requirements pertaining to him. Similarly, the father was not present for the November 2019 hearing, at which the juvenile court adopted the concurrent permanency plan.[16] In fact, the father was not provided a copy of a case plan until November 3, 2020; he filed an objection thereto and requested a reunification plan that included him on November 6, 2020. Three

---

[15] OCGA § 15-11-201 (b) (15) (A).

[16] There is no evidence in the record that the father was given notice of the November 2010 hearing.

weeks later, on November 20, 2020, the Department filed its non-reunification motion. Following the March 2021 hearing at which the father objected to the Department's failure to serve him, the court entered a permanency hearing and review order on April 29, 2021, noting for the first time the obligations imposed on the father.

In light of our holding below in Division 2, we need not decide whether the juvenile court erred by accepting the case plans, which failed to meet statutory procedural requirements, without conducting the hearing requested by the father. Nevertheless, we note that the Department's failure to comply with statutory requirements has deprived the Father of the opportunity to challenge the Department's unilateral conduct predicated on the Father's predetermined unfitness.[17]

2. The father further contends that the evidence was insufficient to demonstrate by clear and convincing evidence that reunification with the father is not appropriate. We agree.

---

[17] See *In the Interest of B. G.*, 345 Ga. App. 167, 170-176 (2) (812 SE2d 552) (2018) (physical precedent only) (vacating a non-reunification order based on the juvenile court's failure to separately state the facts and conclusions of law and noting the violation of the uncle's due process rights based on multiple factors, including the Department's failure to serve the uncle with the dependency petition or notice of the preliminary protective hearing, and the court's failure to give the aunt and uncle the opportunity to meet case plan goals).

Except in certain circumstances not applicable to this case, if a court places custody of a child with the Department, "*reasonable efforts shall be made to preserve or reunify families . . . [t]o . . . make it possible for a child . . . to return safely to his or her home at the earliest possible time.*"[18] The Department may, in some cases, recommend that non-reunification services are not appropriate. Pursuant to OCGA § 15-11-204 (d),

> [The Department] shall have the burden of demonstrating by clear and convincing evidence that a reunification plan is not appropriate considering the health and safety of the child adjudicated as a dependent child and such child's need for permanence. There shall be a presumption that reunification is detrimental to a child adjudicated as a dependent child and reunification services should not be provided if the court finds by clear and convincing evidence that: (1) Such child's parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family; (2) An alleged dependent child has been removed from his or her home on at least two previous occasions and reunification services were made available on those occasions; (3) A ground for terminating parental rights exists; or (4) Any of the circumstances set out in subsection (a) of Code Section 15-11-203 exist, making it unnecessary to provide reasonable efforts to reunify.[19]

---

[18] (Emphasis supplied.) OCGA § 15-11-202 (a) (2).

[19] OCGA § 15-11-203 (a) provides:

14

As the appellate court, we view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that reasonable efforts to reunify the children with their parents would be detrimental to them and therefore reunification services should be terminated.[20]

---

(a) The court may direct that reasonable efforts to eliminate the need for placement of an alleged dependent child shall not be required or shall cease if the court determines and makes written findings of fact that a parent of an alleged dependent child: (1) Has subjected his or her child to aggravated circumstances; (2) Has been convicted of the murder or murder in the second degree of another child of such parent; (3) Has been convicted of the voluntary manslaughter of another child of such parent; (4) Has been convicted of aiding or abetting, attempting, conspiring, or soliciting to commit murder or voluntary manslaughter of another child of such parent; (5) Has been convicted of committing a felony assault that results in serious bodily injury to the child or another child of such parent; (6) Has been convicted of rape, sodomy, aggravated sodomy, child molestation, aggravated child molestation, incest, sexual battery, or aggravated sexual battery of the alleged dependent child or another child of the parent; (7) Is required to register as a sex offender and that preservation of a parent-child relationship is not in the alleged dependent child's best interests; or (8) Has had his or her rights to a sibling of the alleged dependent child terminated involuntarily and the circumstances leading to such termination of parental rights to that sibling have not been resolved.

[20] (Punctuation omitted.) *In the Interest of A. M.*, 306 Ga. App. 358, 358-359 (702 SE2d 686) (2010) (decided under former OCGA § 15-11-58). See also *In re: T. S.*, 310 Ga. App. 100, 103 (2) (712 SE2d 121) (2011) (decided under former OCGA § 15-11-58) ("It is well established that in order to determine that reunification is no longer appropriate, a juvenile court must find by clear and convincing evidence that efforts to reunify the child with his or her family will be detrimental to the child.") (punctuation omitted).

In this case, the juvenile court did not find a presumption that reunification was detrimental to the children based on the factors set forth in OCGA § 15-11-204 (d), nor does the evidence support such a presumption. The Department did not prove by clear and convincing evidence that the "alleged dependent child[ren have] been removed from [their] home on at least two previous occasions and reunification services were made available on those occasions[21]; "[a] ground for terminating parental rights exists"[22]; or "[a]ny of the circumstances set out in subsection (a) of Code Section 15-11-203 exist."[23] And the undisputed evidence shows that the father complied with all of the requirements of the case plan that he was able to complete, including DNA testing and parenting and psychological assessments, and it was impossible for him to complete the remaining requirements because of prison restrictions resulting from the COVID-19 pandemic. Accordingly, the Department failed to demonstrate by clear and convincing evidence that the father "has

---

[21] OCGA § 15-11-204 (d) (2).

[22] OCGA § 15-11-204 (d) (3).

[23] OCGA § 15-11-204 (d) (4).

16

unjustifiably failed to comply with a previously ordered plan designed to reunite the family."[24]

Instead of finding a presumption under OCGA § 15-11-204 (b), the juvenile court based its approval of the non-reunification plan on the grounds that the father was incarcerated and would remain so until March 2023, he was unable to care for the children or to "work a case plan for reunification at this time, due to the COVID-19 restrictions of the prison," and that non-reunification was in the best interest of the children.

Given the father's incarceration, the father could not have physical custody of the children at the time of the hearing. And the children are apparently thriving in the care of the foster parents. But there was not clear and convincing evidence that *reunification* with the father would be detrimental to the children. To the contrary, the father had fully complied with all requirements imposed upon him that he could, he was writing letters to the children, and he was awaiting the opportunity for visitation with the children; he could not complete the remaining goals of his case plan because

---

[24] OCGA § 15-11-204 (d) (1).

17

of prison restrictions resulting from the pandemic.[25] Notwithstanding the Department's procedural failures and the resulting violation of the father's due process rights, the juvenile court's entry of the non-reunification order was unsupported by the evidence.[26]

Accordingly, "we vacate the [non-reunification order]. . . . This case is remanded 'for the establishment of a reunification plan for the father, subject to whatever disposition is warranted by future events and those occurring since the termination hearing.'"[27] Establishment of such plan must, of course, comply with the

---

[25] It is unclear why some of those services, including parenting and substance abuse classes and therapy, could not be conducted virtually.

[26] See *In the Interest of M. H.*, 251 Ga. App. 528, 530-532 (554 SE2d 616) (2001) (reversing non-reunification order "[b]ecause the Department failed to provide clear and convincing evidence that reunification would be detrimental to [the child].") (decided under former OCGA § 15-11-58).

[27] (Citations omitted.) *In the Interest of T. Z. L.*, 325 Ga. App. 84, 99 (1) (b) (751 SE2d 854) (2013) (reversing termination order and remanding case for entry of an appropriate reunification plan because the father, who was incarcerated, had not had an adequate opportunity to complete the goals of his case plan and, although there was evidence of four prior convictions, two of the crimes were committed before the child's birth, only one involved a lengthy (four-year) period of incarceration, and there was no finding that the father was likely to continue to engage in criminal activity).

18

mandates of OCGA §§ 15-11-200 and 15-11-201 with regard to notice and involvement with the father.

*Judgment vacated and case remanded. Reese, J., and Senior Appellate Judge Herbert E. Phipps concur*.